

**FILE**

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE OCT 2 2 2015

*Madsen, C.J.*
CHIEF JUSTICE

This opinion was filed for record
at 8:00AM on Oct. 22, 2015

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| DARLENE BROWN, | |
| Appellant, | |
| and | NO. 90652-1 |
| BRIAN A. LONGWORTH and JOHN MICHAEL LEWIS, | |
| Plaintiffs, | EN BANC |
| v. | |
| WASHINGTON STATE DEPARTMENT OF COMMERCE, | Filed ___OCT 2 2 2015___ |
| Respondent. | |

STEPHENS, J.—In 2011, the legislature enacted the foreclosure fairness act (FFA), LAWS OF 2011, ch. 57, to amend the deeds of trust act (DTA), ch. 61.24 RCW. Under the FFA, the Department of Commerce (Department) administers a mediation program to encourage home loan modifications in lieu of foreclosures. In that

program, a beneficiary of a deed of trust must mediate with a residential borrower before the borrower's home may be foreclosed. RCW 61.24.163. The FFA exempts from mediation certain beneficiaries that are relatively small banks, specifically federally insured depository institutions that were not a beneficiary of deeds of trust in more than 250 trustee sales of owner-occupied residential homes in Washington during the prior year. RCW 61.24.166.

After defaulting on her home loan, Darlene Brown requested FFA mediation. The Department denied the request, reasoning the beneficiary of her deed of trust was exempt from mediation. Whether that determination was correct turns on whether the beneficiary of Brown's deed of trust for purposes of the exemption statute, *id.*, is the holder of her promissory note (M&T Bank, an exempt entity), or its owner (Federal Home Loan Mortgage Corporation (Freddie Mac), a nonexempt entity).

We conclude that the Department correctly recognized the holder of the note as the beneficiary for the purposes of the mediation exemption statute, *id.* We further hold that a party's undisputed declaration submitted under penalty of perjury that the party is the holder of the note satisfies the DTA's proof of beneficiary provisions, RCW 61.24.030(7)(a) and RCW 61.24.163(5)(c). The holder of the note satisfies these provisions and is the beneficiary because the legislature intended the beneficiary to be the party who has authority to modify and enforce the note.

The Department correctly determined that Brown is not entitled to mediation because the note holder and beneficiary, M&T Bank, satisfies the conditions of the

mediation exemption statute, RCW 61.24.166. We reject Brown's contention that our interpretation of the DTA renders the statute unconstitutional. We affirm the superior court's judgment.

## I. BACKGROUND

### 1. *Residential Foreclosure under the DTA*

Prior to 1965, Washington law recognized mortgages as the only security interest in real property in the state. Mortgages must be foreclosed through the judicial process. In 1965, the legislature enacted the DTA to "supplement[] the time-consuming judicial foreclosure procedure [for mortgages] by providing [an] alternative private sale which results in substantial savings of time." John A. Gose, *The Trust Deed Act in Washington*, 41 WASH. L. REV. 94, 95-96 (1966) (footnotes omitted). We now recognize the DTA promotes three objectives: "'First, the nonjudicial foreclosure process should remain efficient and inexpensive. Second, the process should provide an adequate opportunity for interested parties to prevent wrongful foreclosure. Third, the process should promote the stability of land titles.'" *Bain v. Metro. Mortg. Grp., Inc.*, 175 Wn.2d 83, 94, 285 P.3d 34 (2012) (quoting *Cox v. Helenius*, 103 Wn.2d 383, 387, 693 P.2d 683 (1985)).

A deed of trust creates a security interest in real property. A deed of trust transaction is "a three-party transaction in which the borrower (grantor) deeds the property to a trustee who holds the deed as security for the lender (beneficiary)" in return for the borrower having received a loan from the lender. Gose, *supra*, 41 WASH. L. REV. at 96. The DTA defines the relevant parties. RCW 61.24.005(2),

(3), (7), (16). In the transaction's simplest form, the borrower *is* the grantor and the lender *is* the beneficiary. The trustee acts as a neutral third party and owes a "duty of good faith to the borrower, beneficiary, and grantor." RCW 61.24.010(4). Ultimately, if the borrower breaches the obligations owed to the beneficiary, the trustee may foreclose the home in a trustee's sale. RCW 61.24.020. But before this remedy may occur, the DTA establishes detailed procedures that must be satisfied.

The beneficiary must first attempt to communicate with the borrower who is in default through a series of statutorily prescribed methods. RCW 61.24.031. The beneficiary must send a letter to the borrower containing certain information, including that the borrower should contact a housing counselor to discuss mediation under the FFA. *Id.* at (1)(c). The beneficiary must also engage in a sequence of phone calls to attempt to communicate with the borrower, a process known in the statute as "due diligence." *Id.* at (5). If the borrower responds to these communications, the notice of default cannot issue for at least 90 days. *Id.* at (1)(a). During that period, the parties "shall attempt to reach a resolution," such as a loan modification. *Id.* at (4); *see also id.* at (1)(e). If the borrower never responds, however, the notice of default may issue after 30 days. *Id.* at (1)(a). After the relevant time period elapses and if the parties have not agreed to modify the loan, the trustee or beneficiary may then issue the notice of default. *Id.*

After the notice of default has been issued, the FFA's foreclosure mediation program becomes available to qualified parties. RCW 61.24.163. To gain access, a government-certified housing counselor or an attorney must refer the borrower to

the mediation program. *Id.* at (1). The referring party sends a form to the borrower and the Department "stating that mediation is appropriate." *Id.* at (2). Within 10 days of receiving the form, the Department must send a notice to the parties "stating that the parties have been referred to mediation" and the Department then selects a mediator. *Id.* at (3)(a), (b).

However, not all beneficiaries are subject to the mediation program. As relevant here, the FFA exempts from mediation

> any federally insured depository institution, as defined in 12 U.S.C. Sec. 461(b)(1)(A), that certifies to the [D]epartment under penalty of perjury that it was not a beneficiary of deeds of trust in more than two hundred fifty trustee sales of owner-occupied residential real property that occurred in this state during the preceding calendar year.

RCW 61.24.166.

If the parties are referred to mediation, the statute directs the borrower and the beneficiary to exchange certain information with each other and with the mediator. The borrower provides information concerning, for example, debts, assets, and expenses. RCW 61.24.163(4). The beneficiary provides 10 items of information, including the balance of the loan, an estimate of arrearage, a list of outstanding fees and charges, and a payment history of the prior 12 months. *Id.* at (5). At issue in this case, the beneficiary must provide to the borrower and mediator

> [p]roof that the entity claiming to be the beneficiary is the owner of any promissory note or obligation secured by the deed of trust. Sufficient proof may be a copy of the declaration described in RCW 61.24.030(7)(a).

*Id.* at (5)(c). The cross-referenced statute provides:

> It shall be requisite to a trustee's sale:

> . . . .
> . . . [t]hat, for residential real property, before the notice of trustee's sale is recorded, transmitted, or served, the trustee shall have proof that the beneficiary is the owner of any promissory note or other obligation secured by the deed of trust. A declaration by the beneficiary made under the penalty of perjury stating that the beneficiary is the actual holder of the promissory note or other obligation secured by the deed of trust shall be sufficient proof as required under this subsection.

RCW 61.24.030(7)(a). After the parties exchange this information, the mediator must send written notice to the parties. RCW 61.24.163(7)(b). This notice informs the parties that, among other things, a person with authority to modify the loan must be present in the mediation. *Id.* at (7)(b)(ii).

The mediation session follows. The parties "must address the issues of foreclosure that may enable the borrower and the beneficiary to reach a resolution," such as modifying the terms of the loan. *Id.* at (9). The mediator may require the parties to consider the borrower's current and future economic circumstances, *id.* at (9)(a), and the "net present value of receiving payments pursuant to a modified mortgage loan as compared to the anticipated net recovery following foreclosure," *id.* at (9)(b).

After the close of mediation, the mediator renders a decision with binding legal effects. The mediator sends a certification to the parties and the Department that explains his or her findings on "[w]hether the parties participated in the mediation in good faith," *id.* at (12)(d), and "the result of any net present value test expressed in a dollar amount," *id.* at (12)(e). If the mediator finds the beneficiary failed to act in good faith, the borrower can use that finding as "a defense to the nonjudicial foreclosure action," though the beneficiary may later offer facts to rebut

the allegation that it failed to act in good faith. *Id.* at (14)(a). If the mediator's certification "shows that the net present value of the modified loan exceeds the anticipated net recovery at foreclosure," that finding "constitutes a basis for the borrower to enjoin the foreclosure." *Id.* at (14)(c). The statute does not appear to allow the beneficiary to subsequently rebut this finding. *See id.* Last, the certification states that mediation has been completed. This allows the notice of sale to be issued, if the parties have been unable to agree and if the mediator's findings are not a bar to the foreclosure. *Id.* at (16).

Following the beneficiary's initial "due diligence" communications with the borrower (RCW 61.24.031), and after the mediation program (RCW 61.24.163) has been completed, the DTA provides eight additional requisites to a trustee's sale. RCW 61.24.030(1)-(8). The first requisite to a trustee's sale is that the deed of trust must contain a power of sale clause, i.e., a clause in the deed that recognizes that the trustee may sell the property upon default. *Id.* at (1). Second, the deed must state that the property is not primarily used for agricultural purposes. *Id.* at (2). Third, the grantor must have defaulted on the promissory note or other obligation. *Id.* at (3). Fourth, the beneficiary must not have a pending lawsuit against the borrower on the defaulted promissory note. *Id.* at (4). Fifth, the deed must have been recorded in the county the property is located. *Id.* at (5). Sixth, the trustee must maintain physical presence, telephone service, and availability for personal service of process within the state. *Id.* at (6).

The seventh requisite to a trustee sale under RCW 61.24.030 is at issue in this case. It provides that the trustee must have "proof that the beneficiary is the owner" of the promissory note. *Id.* at (7)(a). The same subsection also provides that a declaration stating that "the beneficiary is the actual holder of the promissory note" "shall be sufficient proof" "[u]nless the trustee has violated his or her duty [of good faith] under RCW 61.24.010(4)." *Id.* at (7)(a), (b).

The eighth requisite to a trustee sale under RCW 61.24.030, concerning the notice of default, is also at issue in this case. That provision states that the trustee or beneficiary must issue the notice of default at least 30 days before the notice of sale issues and also establishes the contents of the notice of default. RCW 61.24.030(8). Among the 12 items that must be included in the notice of default (e.g., a description of property and the amount in arrears), 1 item may inform the issue before us. That item provides that the notice of default must include the name of the "owner of any promissory notes or other obligations secured by the deed of trust," and the name of the "party acting as a servicer of the obligations secured by the deed of trust." *Id.* at (8)(*l*).

Upon completion of these requisites, the trustee initiates the process of foreclosing and selling the home. RCW 61.24.040. Upon the sale of the home and the trustee's physical delivery of the deed to the purchaser, the borrower's title transfers to the purchaser. RCW 61.24.050. By foreclosing on a residential deed of trust under the DTA rather than on a mortgage through the judicial process, the

beneficiary forfeits its right to a deficiency judgment on the loan. RCW 61.24.100(1).

2. *Freddie Mac's Practices in the Secondary Market for Mortgage Notes*

As we will discuss further below, Freddie Mac purchased Brown's note on the secondary market for mortgage notes.[1] Brown seeks mediation with Freddie Mac. To put these facts in context, we first discuss Freddie Mac's practices in the secondary market for mortgage notes.

In the simple model of lending described above, there is no question who the beneficiary is. The beneficiary and the lender are the same institution. That institution both owns and holds the note for the entire duration of the note. *See generally* IT'S A WONDERFUL LIFE (Liberty Films 1946). Today, it is more common that the initial lender will sell the note in the large secondary market for mortgage notes. This secondary market complicates the issue that this case turns on— identifying the beneficiary of Brown's deed of trust.

Freddie Mac, the Government National Mortgage Association (Ginnie Mae), and the Federal National Mortgage Association (Fannie Mae) are the largest owners of residential mortgage notes in the United States. We are told they own or guarantee more than 90 percent of residential mortgage notes originated in 2014 throughout the United States. *See* Amicus Br. of Fed. Home Loan Mortg. Corp. at 3, *Trujillo v. Nw. Tr. Servs., Inc.*, No. 90509-6 (Wash. Aug. 20, 2015) (Amicus Br.). Freddie Mac

---

[1] We refer to "mortgage notes" to mean both promissory notes secured by mortgages and promissory notes secured by deeds of trust.

owns or guarantees around 300,000 mortgage notes secured by residential homes in Washington State. *Id.* About 8,000 of those borrowers are delinquent on payments. *Id.*

Freddie Mac does not lend to homebuyers. Instead, Freddie Mac purchases mortgage notes from the initial lenders. Often, Freddie Mac pools hundreds of these mortgage notes into a trust, and the trustee issues and sells securities to investors in various tranches of seniority. The securities represent the investors' claims on the stream of mortgage payments or other interests (e.g., late fees) on the mortgage notes. *See Cashmere Valley Bank v. Dep't of Revenue*, 181 Wn.2d 622, 625-28, 334 P.3d 1100 (2014) (generally discussing mortgage-backed securities). Freddie Mac guarantees the borrowers' monthly payments on the underlying notes. If a borrower stops paying, Freddie Mac will step in and pay the investors. Freddie Mac does all of this to further its congressionally mandated mission to "provide ongoing assistance to the secondary market for residential mortgages" to thereby "promote access to mortgage credit throughout the Nation" and expand homeownership. 12 U.S.C. § 1716(3), (4).

Freddie Mac's relationship with the initial lender is important to understanding Brown's case. When Freddie Mac purchases a mortgage note from a lender, the lender often agrees to "service" the loan in return for compensation.[2]

---

[2] The servicer is not always the original lender. For example, in this case Countrywide Bank originated Brown's note but Countywide was later purchased by Bank of America. M&T Bank, unaffiliated with Countrywide or Bank of America, now services the note.

Freddie Mac controls its servicers through a voluminous, detailed handbook. *See* FREDDIE MAC, SINGLE-FAMILY SELLER/SERVICER GUIDE (SERVICER'S GUIDE), http://www.allregs.com/tpl/main.aspx (under "Single-Family Seller/Servicing Guide, Bulletins, and Industry Letters," click on "Single-Family Seller/Servicer Guide, Volume 1" or "Single-Family Seller/Servicer Guide, Volume 2"). Under the *Servicer's Guide*, servicers perform daily activities associated with the loan, such as "invoicing borrowers, collecting mortgage payments, and generally interfacing with borrowers." Amicus Br. at 4.

If a borrower becomes delinquent and defaults on a loan, the servicer must "work to remediate delinquent loans by pursuing collection efforts, conducting loss mitigation activities, and, if necessary, initiating foreclosures." *Id.* The *Servicer's Guide* authorizes and encourages servicers to modify the mortgage note. *See, e.g.,* SERVICER'S GUIDE, *supra*, chs. 65.4 ("Freddie Mac wants the Servicer to pursue alternatives to foreclosure whenever possible, because they benefit not only the Borrower, but also the Servicer, Freddie Mac and other interested parties. . . . Even after the Servicer has initiated foreclosure, it should still pursue alternatives to foreclosure to mitigate potential credit losses, whenever possible."), 65.6 (establishing servicers' required loss mitigation activities), 65.11 (providing that a servicer may grant a borrower a modified payment plan, a short-term forbearance, or a long-term forbearance).

If a servicer and the borrower cannot agree on a loan modification, Freddie Mac authorizes the servicer to institute the foreclosure process. *Id.* ch. 66.1 ("The

Servicer must refer to, manage and complete foreclosure in accordance with this chapter [chs. 66.1-66.75] when there is no available alternative to foreclosure."). When a servicer forecloses on a Freddie Mac owned note, the servicer does so in its own name, not in Freddie Mac's name. *See id.* ch. 66.11(a) ("The Servicer must instruct the foreclosure counsel to process the foreclosure in the Servicer's name . . . ."). The servicer has authority to do this because when Freddie Mac purchases the mortgage note, the *Servicer's Guide* requires the note to be indorsed in blank. *See id.* ch. 16.4(c) ("At the time the Mortgage is sold to Freddie Mac, the Seller must [i]ndorse the Note in blank . . . ."). When a note is indorsed in blank, it is "payable to bearer and may be negotiated by transfer of possession alone." RCW 62A.3-205(b).

Before the servicer institutes foreclosure proceedings, Freddie Mac provides the servicer with actual or constructive possession of the original note. *See* SERVICER'S GUIDE, *supra*, ch. 18.6(d), (e). Under the *Servicer's Guide*, the servicer is deemed to be in constructive possession of the note when the servicer commences a legal action or files the form (form 1036) that seeks actual possession of the note from Freddie Mac's note custodian. *Id.* at 18.6(d). Alternatively, if applicable state law requires the servicer to have actual possession of the note to institute foreclosure proceedings, the servicer submits a form 1036 to Freddie Mac's note custodian, who then delivers physical possession of the note to the servicer. *Id.* at 18.6(e).

Even while the servicer acts on Freddie Mac's behalf to hold the note, to seek to modify the note, and to foreclose on the note, Freddie Mac still *owns* the note. As

the note owner, Freddie Mac remains entitled to "the ultimate economic benefit of payments on the note." Amicus Br. at 3. Thus, the monthly note payments or the proceeds of a foreclosure sale flow to Freddie Mac, less the servicer's fee. Freddie Mac in turn has arrangements where it provides its trustees of pools of mortgage-backed securities with the funds so that the trustee may pay the investors in mortgage-backed securities.

Freddie Mac's practice of splitting note ownership from note enforcement is at the heart of this case. Freddie Mac owns Brown's note. At the same time, a servicer, M&T Bank, holds the note and is entitled to enforce it. As we will describe below, Washington's Uniform Commercial Code (UCC) authorizes this division of note ownership from note enforcement.

### 3. *The Rights of Note Holders and Note Owners under the UCC*

A promissory note evidencing a home loan is often a negotiable instrument, making article 3 of the UCC applicable. RCW 62A.3-102. The promissory note at issue in this case is a negotiable instrument governed by article 3 of the UCC.[3]

---

[3] Subject to exceptions not applicable here, the UCC defines a "negotiable instrument" as "an unconditional promise or order to pay a fixed amount of money" if three requirements are met. RCW 62A.3-104. The instrument must (1) be "payable to bearer or to order at the time it is issued or first comes into possession of a holder"; (2) be "payable on demand or at a definite time"; and (3) concern only a promise to pay money, rather than any other performance (except for certain limited exceptions that allow nonmonetary performance, including that the instrument may include an undertaking or power to give, maintain, or protect collateral to secure payment). *Id.* at (a). As to the first element, the note at issue here is indorsed in blank, *see* Agency R. (AR) 171, and is thus payable to the bearer, *see* RCW 62A.3-205(b). As to the second element, the note is payable at a definite time, namely the first day of every month until July 1, 2038. AR at 170; *see also* RCW 62A.3-108(b). As to the third element, the note concerns only Brown's obligation to pay money and no other performance. AR at 170-71.

Under the UCC, promissory notes embrace two sets of rights. The first set of rights is held by the "person entitled to enforce" the note, a legal term of art commonly referred to as "PETE" status. *See* RCW 62A.3-301 (definition). The second set of rights is ownership of the note. The owner has the right to the economic benefits of the note, such as monthly mortgage payments and foreclosure proceeds. The PETE and the owner of the note can be the same entity, but they can also be different entities. The Permanent Editorial Board for the UCC recently issued an authoritative report on this distinction. *See* PERMANENT EDITORIAL BD. FOR UCC, APPLICATION OF THE UNIFORM COMMERCIAL CODE TO SELECTED ISSUES RELATING TO MORTGAGE NOTES (2011) (UCC REPORT ON MORTGAGE NOTES), http://www.uniformlaws.org/Shared/Committees_Materials/PEBUCC/PEB_Report _111411.pdf.

Washington law defines a "person entitled to enforce an instrument," or a PETE, as

> (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to RCW 62A.3-309 or 62A.3-418(d).

RCW 62A.3-301. This statute also clarifies the relationship between PETE status and ownership status. It provides that a person *need not* own a note to be entitled to enforce the note:

> *A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument* or is in wrongful possession of the instrument.

*Id.* (emphasis added).

The first method to gain PETE status is to be "the holder of the instrument."[4] *Id.* Washington's UCC defines a "holder" to be the "person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." RCW 62A.1-201(21)(A); *accord* BLACK'S LAW DICTIONARY 848 (10th ed. 2014) (defining "holder" to be a person "who has legal possession of a negotiable instrument and is entitled to receive payment on it"). The statute's definition of "holder" does not turn on ownership. That is unsurprising, given that the statute expressly provides that "[a] person may be a person entitled to enforce the instrument[, a PETE,] *even though the person is not the owner* of the instrument." RCW 62A.3-301 (emphasis added). A leading treatise on article 3 of the UCC confirms that a holder "may sue in his or her own name to enforce payment even though he or she is not the owner of the instrument." 6B ANDERSON ON THE UNIFORM COMMERCIAL CODE § 3-301:4R at 267 (Lary Lawrence ed., 3d ed., 2003 rev.).[5] This rule focuses on the party who possesses the note in order to protect the

---

[4] The second and third methods of gaining PETE status under RCW 62A.3-301(ii) and (iii) are not at issue here. As used in subsection (ii), a "nonholder in possession of the instrument who has the rights of a holder" arises when possession of a note is delivered *without* an indorsement and *without* the note being bearer paper, but still for the purpose giving the receiving person the right to enforce the note. Here, this method is not at issue because the note *was* indorsed in blank. The third method of gaining PETE status concerns proving the contents of a lost note and payment by mistake. The note at issue here was not lost, and no mistaken payments were made.

[5] *See also* 5A ANDERSON ON THE UNIFORM COMMERCIAL CODE § 3-201:7, at 449 (Ronald A. Anderson ed., 3d ed., 1994 rev.) ("The mere possession of bearer paper qualifies the possessor as a holder and establishes that person's right to sue . . . . The holder of bearer paper may sue on [the instrument] even though the holder does not have any express authorization from the beneficial owner of the paper to bring suit."); *id.* §§ 3-301:5, at 568 ("It is necessary to distinguish between 'owner' and 'holder.' Holder means a person

-15-

borrower from being sued fraudulently or by multiple parties on the same note. 5A ANDERSON ON THE UNIFORM COMMERCIAL CODE § 3-207:7, at 449 (3d ed. 1994 rev.) ("The purpose of requiring that the plaintiff have possession of the paper is to protect the defendant from multiple liability.").

PETE status triggers key consequences under article 3 of the UCC. By definition, the PETE is the person entitled to enforce the note, i.e., to sue in its own name and collect on the note if the obligation has been dishonored. RCW 62A.3-301; *see also* RCW 62A.3-502 (defining "dishonor"). Thus, article 3 elsewhere provides that the borrower's "*obligation is owed to* a person entitled to enforce the instrument[, the PETE]." RCW 62A.3-412 (emphasis added). As a consequence, the PETE may modify and discharge the note. *See* RCW 62A.3-604(a) ("A person entitled to enforce an instrument[, a PETE], with or without consideration, may discharge the obligation of a party to pay the instrument (i) by an intentional voluntary act, such as surrender of the instrument to the party, destruction, mutilation, or cancellation of the instrument, cancellation or striking out of the party's signature, or the addition of words to the instrument indicating discharge, or (ii) by agreeing not to sue or otherwise renouncing rights against the party by a

---

who is in possession of an instrument issued or indorsed to that person or to his or her order or to bearer or in blank. An owner of an instrument does not necessarily have possession of the instrument. . . . The fact that a person is not the 'owner' of paper does not affect his status as a holder." (footnotes omitted)), § 3-201:5, at 448 ("Only the holder of a note can authorize the foreclosure of the collateral that is security for the note."); *accord* Richard Cosway, *Negotiable Instruments—A Comparison of Washington Law and Uniform Commercial Code Article 3*, *in* COLLECTED ESSAYS ON THE UNIFORM COMMERCIAL CODE IN WASHINGTON 261, 268 (1967) (discussing how RCW 62A.3-301 is consistent with pre-UCC Washington common law).

signed writing."). When the borrower pays the PETE—and *only* when the borrower pays the PETE—the borrower's obligation is discharged. *See* RCW 62A.3-602(a) ("[A]n instrument is paid to the extent payment is made . . . to a person entitled to enforce the instrument[, a PETE]. To the extent of the payment, the obligation of the party obliged to pay the instrument is discharged . . . ." (emphasis added)). After discharging its obligations to the PETE, the borrower cannot thereafter be held liable on the note by another party, such as the note owner. *Id.*[6]

In sum, the borrower owes and discharges his or her obligation to the PETE. The PETE enforces and modifies the note. This relationship remains the case "even though the [PETE] is not the owner of the instrument." RCW 62A.3-301. The PETE's possession of the note provides the borrower "with a relatively simple way of determining to whom his or her obligation is owed and, thus, whom to pay in order to be discharged." UCC REPORT ON MORTGAGE NOTES, *supra*, at 8.

We now turn to the ownership of a note under the UCC. The rules concerning ownership of a note govern who is "entitled to the economic value of the note." *Id.* Sometimes "the person entitled to enforce a note[, the PETE,] is also its owner," but "this need not be the case." *Id.* In the initial lending transaction, the borrower issues a note to the lender to evidence the borrower's obligation. The lender holds the note

---

[6] *See also* 5A ANDERSON ON THE UNIFORM COMMERCIAL CODE § 3-301:6, at 568-69 ("The question of who has a beneficial interest in the proceeds of the paper is irrelevant to the question of who may sue on the paper. . . . A [borrower] cannot object to suit by the payee-holder on the ground that a third person has some interest in the proceeds of the note, as such right is against the holder and does not affect the liability of the [borrower] on his or her note. No danger of multiple liability exists as a judgment by the holder against the [borrower] is a final and conclusive determination of the [borrower's] liability.").

(and is thus the PETE) *and* owns the note. But, as here, the lender may *sell* the note on the secondary market for mortgage notes. At this point, the PETE's rights and the owner's rights reside in different parties if the seller of the note does not transfer possession of the note to the purchaser of the note.

While article 3 of the UCC establishes the PETE's rights, article 9 of the UCC establishes the owner's rights after the note has been sold. *Id.* Article 9 is primarily known for regulating transactions involving security interests in personal property. RCW 62A.9A-109(a)(1) ("Article [9] applies to . . . [a] transaction, regardless of its form, that creates a security interest in personal property or fixtures by contract . . . ."). But article 9 also governs other transactions that do not involve security interests. As relevant here, "Article [9] applies to . . . [a] *sale of* accounts, chattel paper, payment intangibles, or *promissory notes*."[7] *Id.* at (a)(3) (emphasis added). A promissory note is simply an asset, and, like most assets, it can be sold. Article 9 governs the sale and ownership of promissory notes. *Id.*

A purchaser of a promissory note gains "outright ownership" of a note when the three conditions in RCW 62A.9A-203(b) are satisfied. UCC REPORT ON MORTGAGE NOTES, *supra*, at 10. First, value must be given in the transaction. RCW

---

[7] Article 9 regulates both security interests in personal property and the sale of payment rights such as promissory notes through the use of technical definitional terms. *See* UCC REPORT ON MORTGAGE NOTES, *supra*, at 8-9. The UCC defines a "security interest" to include "any interest of a . . . buyer of . . . a promissory note," RCW 62A.1-201(b)(35), a "debtor" to include "[a] seller of . . . promissory notes," RCW 62A.9A-102(a)(28)(B), a "secured party" to include a person "to which . . . promissory notes have been sold," *id.* at (a)(73)(D), and "collateral" to include "promissory notes that have been sold," *id.* at (a)(12)(B). With these definitions, "the rules that apply to security interests that secure an obligation generally also apply to transactions in which a promissory note *is* sold." UCC REPORT ON MORTGAGE NOTES, *supra*, at 9 (emphasis added).

62A.9A-203(b)(1). Second, the seller of the note must have "rights in" the note. *Id.* at (b)(2). In other words, the seller must own the note, as is the case when a lender originates a loan in the first instance. UCC REPORT ON MORTGAGE NOTES, *supra*, at 10. Third, the seller of the note must either authenticate a "security agreement"[8] that describes the note *or* deliver possession of the note to the purchaser. RCW 62A.9A-203(b)(3)(A)-(B).

As to this third requirement, if the seller delivers possession of the note to the purchaser, the purchaser becomes both the owner of the note *and* the PETE (because it holds the note). But if—as occurred in this case—the seller does *not* deliver possession of the note to the purchaser and instead only authenticates an agreement that describes the note, the purchaser has established its ownership interest in the note (because RCW 62A.9A-203(b)'s three conditions are satisfied) but is not the PETE (because it does not hold the note). *See* UCC REPORT ON MORTGAGE NOTES, *supra*, at 10 ("[I]n this situation, in which the seller of a note may retain possession of it, the owner of a note may be a different person than the person entitled to enforce the note[, the PETE].").

Through article 3 and article 9, the UCC authorizes parties to split PETE status from ownership status in certain circumstances. The PETE may modify and enforce

---

[8] In this context, a "security agreement" is simply a purchase-and-sale agreement of a promissory note. *See* RCW 62A.9A-102(a)(74) (defining a "security agreement" to mean "an agreement that creates or provides for a security interest"); RCW 62A.1-201(b)(35) (in turn defining a "security interest" in relevant part as "any interest of a . . . buyer of . . . a promissory note").

the note. The borrower pays the PETE to discharge the borrower's obligation. All the while, the owner retains entitlement to the economic value of the note.

### 4. *Brown's Case*

In 2008, Brown's father and stepmother borrowed $68,000 from Countrywide Bank, evidenced by a promissory note. *See* Agency R. (AR) at 170-71. The note is secured by a deed of trust on their home in Kennewick, Washington.[9]

After Brown's father and stepmother died, Brown took title to the home and assumed the obligations under the note.[10] She then defaulted. The trustee, Northwest Trustee Services Inc., sent her a notice of default that said Freddie Mac owns her note and M&T Bank services her note.

Faced with the notice of default, Brown contacted the Northwest Justice Project's Foreclosure Prevention Unit. An attorney there referred Brown to the

---

[9] The parties agree the note is secured by a publicly recorded deed of trust, but the deed is not in this court's record. The deed's absence from the record does not affect this case because RCW 62A.9A-203(g) "'codifies the common-law rule that a transfer of an obligation secured by a security interest or other lien on personal or real property also transfers the security interest or lien,'" UCC REPORT ON MORTGAGE NOTES, *supra*, at 12 n.44 (quoting RCWA 62A.9A-203 U.C.C. cmt. 9); *see also* RCW 62A.9A-203(g) ("The attachment of a security interest [i.e., the "interest of a . . . buyer of . . . a promissory note," RCW 62A.1-201(b)(35),] in a right to payment . . . secured by a security interest . . . on personal or real property is also attachment of a security interest in the security interest, mortgage, or other lien."). This statute "explicitly provides that . . . the assignment of the interest of the seller . . . automatically transfers a corresponding interest in the mortgage to the assignee." UCC REPORT ON MORTGAGE NOTES, *supra*, at 12. The parties present no arguments relating to the deed of trust as distinct from the note.

[10] The Department argues for the first time before this court that Brown did not own the home at the time she sought mediation. The Department's argument is raised in the alternative as a separate basis to affirm the superior court if we disagree with its interpretation of the DTA. *See* Corr. Dep't's Resp. Br. at 39 n.10 (invoking RAP 2.5(a)'s penultimate sentence to affirm on this alternative basis). Because we ultimately agree with the Department's interpretation of the DTA, we do not reach the Department's alternative basis to affirm.

Department for mediation under the FFA. A series of e-mails with the Department ensued. The following undisputed material facts emerged.

Prior to Brown's default, Countrywide sold Brown's note to Freddie Mac, as authorized by the note. AR at 170 ("I understand that the Lender may transfer this Note."). Freddie Mac now owns the note. M&T Bank submitted a declaration under penalty of perjury to the Department that it is the "actual holder" of the note for the purpose of complying with RCW 61.24.163(5)(c) and RCW 61.24.030(7)(a). *See* AR at 169. When Countrywide sold the note to Freddie Mac, Countrywide issued a special indorsement on the note in favor of the note holder, M&T Bank. *See* AR at 171; *see also* RCW 62A.3-205(a) (defining "special indorsement"). Then M&T Bank issued a blank indorsement on the note. *See* AR at 171; *see also* RCW 62A.3-205(b) (defining "blank indorsement"). M&T Bank submitted a declaration under penalty of perjury stating that it was not a beneficiary of deeds of trust in more than 250 homes in Washington in the prior year for the purpose of complying RCW 61.24.166.

Given these undisputed facts, the Department rejected Brown's request for mediation. It interpreted the beneficiary for purposes of the mediation exemption statute, RCW 61.24.166, to be the holder of the note, not the owner. Accordingly, the Department determined that M&T Bank was the beneficiary of Brown's note and was exempt from mediation under RCW 61.24.166 because it was not a beneficiary of deeds of trust in more than 250 homes in Washington in the prior year.

Brown filed a petition for judicial review of the Department's action in superior court.[11] The court agreed with the Department's interpretation and affirmed the Department's denial of mediation. Brown petitioned for direct review. We retained the petition and set this case for hearing as a companion case to *Trujillo v. Northwest Trustee Services, Inc.*, 183 Wn.2d 820, 355 P.3d 1100 (2015). We now affirm.[12]

## II. DISCUSSION

Brown alleges that the Department violated the Administrative Procedure Act (APA), ch. 34.05 RCW, on several grounds, most of which depend on whether the Department correctly interpreted the DTA. We accordingly turn first to the proper interpretation of the DTA and then consider Brown's challenges in the context of the APA.

## A. DTA, ch. 61.24 RCW

Statutory interpretation presents a question of law that we review de novo. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002).

---

[11] Brown was joined by two coplaintiffs in the superior court, but they are "not participating in this appeal." Br. of Appellant at 9.

[12] On June 9, 2015, Brown notified the court that M&T Bank agreed to enter a "Trial Payment Plan" loan modification with Brown, whereby Brown has an opportunity to make reduced monthly payments. *See* Suppl. Info. (June 9, 2015). This is a temporary program Brown intends to complete, and she hopes it will lead to a permanent modification. Because she may "face the need for foreclosure mediation in the future," she maintains her request for declaratory relief that the Department's denial of her request for mediation was based on an erroneous interpretation of the DTA. *Id.* The Department has not argued that this affects the case. We agree. This case is not moot because the modification is temporary and contingent on future behavior. Also, this case involves issues of continuing and substantial public interest that justify rendering a decision on the merits. *See State v. Hunley*, 175 Wn.2d 901, 907, 287 P.3d 584 (2012).

The court's objective is to ascertain and implement the legislature's intent. *Id.* If the statute's meaning is plain on its face, we give effect to that plain meaning as the expression of legislative intent. *Id.* at 9-10. But if the statute remains "'susceptible to more than one reasonable interpretation, then [we] may resort to statutory construction, legislative history, and relevant case law for assistance in discerning legislative intent.'" *Anthis v. Copland*, 173 Wn.2d 752, 756, 270 P.3d 574 (2012) (quoting *Christensen v. Ellsworth*, 162 Wn.2d 365, 373, 173 P.3d 228 (2007)).

### 1. *Statutory Text*

The parties dispute the meaning of four statutory provisions. *See* RCW 61.24.166 (mediation exemption provision), .005(2) (definition of "beneficiary"), .163(5)(c) (proof of beneficiary status), .030(7) (proof of beneficiary status). In cases such as this one, where the holder and the owner of the note are different entities, we conclude these provisions are ambiguous.

Because we must determine whether the beneficiary of Brown's deed of trust is exempt from mediation, we start our analysis with the mediation exemption statute itself, RCW 61.24.166. That statute provides:

> The provisions of RCW 61.24.163 [i.e., the FFA mediation program] do not apply to any federally insured depository institution, as defined in 12 U.S.C. Sec. 461(b)(1)(A), that certifies to the department under penalty of perjury that it was not a beneficiary of deeds of trust in more than two hundred fifty trustee sales of owner-occupied residential real property that occurred in this state during the preceding calendar year.

RCW 61.24.166. Here, only one element of this exemption—the "beneficiary of deeds of trust"—is disputed. If "a beneficiary of deeds of trust" refers to the owner

-23-

of the note (here, Freddie Mac), the statute entitles Brown to mediation with Freddie Mac. That is because Freddie Mac is not a federally insured depository institution, so Freddie Mac cannot claim the exemption. But if "a beneficiary of deeds of trust" refers to the holder of the note (here, M&T Bank), the statute does not entitle Brown to mediation. That is because M&T Bank is a federally insured depository institution that has certified under penalty of perjury to the Department that it has been a beneficiary in less than 250 residential Washington homes in the last year. Thus, this case turns on whether "a beneficiary of deeds of trust" in the exemption statute means the "owner" or the "holder" of the note. The exemption statute itself does not answer that question, so the parties turn to related statutes.

The logical place to turn next is to the statute's definition of "beneficiary." Under the statute's definition,

> "Beneficiary" means the holder of the instrument or document evidencing the obligations secured by the deed of trust, excluding persons holding the same as security for a different obligation.

RCW 61.24.005(2). According to the Department, this definition unambiguously supports its view that a beneficiary for purposes of the mediation exemption provision, RCW 61.24.166, is the holder of the note. Were that the only related statute at issue, the definition's plain language would resolve this case. But two related statutes create ambiguity.

These two related statutes discuss how a party proves that it is a beneficiary. After the parties have been referred to mediation, the FFA provides that they must

exchange information with each other and the mediator. RCW 61.24.163(4). Among other things, the purported beneficiary must provide

> [p]roof that the entity claiming to be the beneficiary *is the owner* of any promissory note or obligation secured by the deed of trust. <u>Sufficient proof may be a copy of the declaration described in RCW 61.24.030(7)(a).</u>

*Id.* at (5)(c) (emphasis added). The cross-referenced subsection, which is one of the nine requisites to a trustee's sale, provides that

> [i]t shall be requisite to a trustee's sale . . . [t]hat, for residential real property, before the notice of trustee's sale is recorded, transmitted, or served, the trustee shall have *proof that the beneficiary is the owner* of any promissory note or other obligation secured by the deed of trust. <u>A declaration by the beneficiary made under the penalty of perjury stating that the beneficiary is the actual holder</u> of the promissory note or other obligation secured by the deed of trust <u>shall be sufficient proof as required under this subsection.</u>

RCW 61.24.030(7)(a) (emphasis added).

These provisions create ambiguity in cases where the owner of the note is different from the holder of the note because the provisions each have a sentence that, standing alone, could be read to support either party's conclusion. Brown focuses on the italicized portions above. She argues these provisions require that the beneficiary *own* the note. But if we give effect to her reading, the second sentence of RCW 61.24.030(7)(a)—providing that a declaration that the beneficiary is the actual holder "shall be sufficient proof" as required by the subsection—is superfluous and inharmonious in cases where it is undisputed that the owner and the holder are different entities. Further, Brown's position—that the word "beneficiary" in the mediation exemption statute, RCW 61.24.166, means "owner"—would be inconsistent with the statutory definition of "beneficiary." *See* RCW 61.24.005(2)

(defining "beneficiary" to be "the holder of the instrument or document evidencing the obligations secured by the deed of trust," not the owner).

By contrast, the Department focuses on the underlined portions above. It emphasizes that a declaration saying the beneficiary is the actual holder "shall be sufficient proof" as required by RCW 61.24.030(7)(a). But if we give effect the Department's reading, the first sentence of RCW 61.24.030(7)(a)—providing that the trustee must have "proof that the beneficiary is the owner"—is superfluous and inharmonious in cases where it is undisputed that the holder is not the owner.

Because these provisions are ambiguous in situations where the note owner and holder are different parties, we cannot conclude that either Brown's or the Department's interpretation is plainly correct and the other side's interpretation is plainly wrong. We thus turn to other indicators of legislative intent—statutory context, case law, and legislative history.

### 2. *Statutory Context*

The Department argues that Washington's UCC supports its interpretation that the beneficiary for the purpose of the mediation exemption statute is the note holder. Brown argues that the content of certain forms under the DTA—specifically, the notice of default form and the notice of sale form—supports her interpretation that the beneficiary is the owner for the purpose of the mediation exemption statute, RCW 61.24.166. We find the Department's contentions more persuasive.

### a. The UCC

The relevant UCC principles discussed above, *see supra* pp. 12-19, guide our analysis. M&T Bank is the holder of Brown's note because M&T Bank possesses the note and because the note, having been indorsed in blank, is payable to bearer. RCW 62A.1-201(21)(A) (holder); RCW 62A.3-205(b) (indorsed in blank). As the holder of the note, M&T Bank is entitled to enforce the note; it is the PETE. RCW 62A.3-301(i). As the PETE, M&T Bank has the authority to modify and discharge the obligation. RCW 62A.3-604. If Brown had fulfilled her obligation and paid M&T Bank, the obligation would have been discharged and she would have been protected from any other suit on the note. RCW 62A.3-602(a).

We agree with the Department that the UCC's focus on PETE status aligns with the legislature's intent behind the DTA's mediation program. *See Bain*, 175 Wn.2d at 103-04 (interpreting the DTA in light of article 3 principles). By enacting a program designed to promote the modification of notes, the legislature necessarily intended the party with the authority to negotiate and modify the note to be present in the FFA mediation session. *See* RCW 61.24.163(7)(b)(ii) (requiring the mediator to send a notice stating that "a person with authority to agree to a resolution, including a proposed settlement, loan modification, or dismissal or continuation of the foreclosure proceeding, must be present . . . during the mediation session"). As discussed above, the party with such modification authority is the PETE, regardless of whether the PETE owns the note. *See supra* pp. 12-19. We implement the

legislature's intent by holding that the party with the authority to modify the loan under article 3 of the UCC—here, the note holder, M&T Bank—is the beneficiary for purposes of the mediation exemption provision, RCW 61.24.166. The Department was entitled to rely on the undisputed declaration stating M&T Bank was the actual holder of the note, thereby satisfying RCW 61.24.030(7)(a) and RCW 61.24.163(5)(c).

### b. DTA Forms

Brown contends the notice of default provision, RCW 61.24.030(8), supports her argument that the beneficiary for purposes of the mediation exemption provision, RCW 61.24.166, is the owner of the note.

The trustee or beneficiary issues the notice of default to the borrower. RCW 61.24.030(8). The notice of default must inform the borrower, among other things, of "the name and address of the *owner* of any promissory notes or other obligations secured by the deed of trust" and "the name, address, and telephone number of a party acting as a *servicer* of the obligations secured by the deed of trust." *Id.* at (8)(*l*) (emphasis added). Only *after* the notice of default has been issued may an attorney or housing counselor refer a borrower to FFA mediation. RCW 61.24.163(1). But, when the attorney or housing counselor does so, the Department's form asks for the contact information of the "Beneficiary (Holder of Note)." WASH. STATE DEP'T OF COMMERCE, *Foreclosure Fairness Program*, http://www.commerce.wa.gov/ Programs/housing/Foreclosure/Pages/default.aspx (last visited Oct. 19, 2015) (click "Referral to Mediation Form and Instructions" to download form). According to

Brown, the Department's interpretation "creates an illogical system where the information [the Department] asks for on the referral form, namely the identity of the beneficiary, cannot be obtained by a referrer from the [notice of default]—the issuance of which triggers the right to ask for FFA mediation." Br. of Appellant at 25.

We disagree. A borrower can identify the note holder based on the information provided in the notice of default. The notice of default informs the borrower of the identity of the "servicer." RCW 61.24.030(8)(*l*). "Servicer" is not a legal term of art. Homeowners use the word to refer to the bank to which they send mortgage payments because they reasonably believe the servicer is the person entitled to enforce the note and because paying the servicer will discharge their obligation. That is true when the servicer holds the note. RCW 62A.3-301(i), -602(a). The inference that a "servicer" denotes a "holder" is therefore apparent and we decline to read the notice of default form as creating an absurd or illogical system for borrowers seeking FFA mediation.

Brown next argues that the statute's notice of sale form appears to equate beneficiary status with ownership. It provides in part, "The attached Notice of Trustee's Sale is a consequence of default(s) in the obligation to [blank space], the Beneficiary of your Deed of Trust and owner of the obligation secured thereby." RCW 61.24.040(f). This form language contemplates the traditional scenario where one party both owns and holds the note, making that party clearly the beneficiary. But the form does not require that the borrower's obligation is *always* owed to the

owner of the note because that would make the DTA conflict with article 3 of the UCC. Article 3 provides that a borrower's "obligation *is owed to a person entitled to enforce* the instrument[, the PETE]," RCW 62A.3-412 (emphasis added), and "[a] person may be a person entitled to enforce the instrument[, a PETE,] even though the person is *not the owner* of the instrument," RCW 62A.3-301 (emphasis added).

### 3. *Case Law*

In 2012, we decided *Bain*, 175 Wn.2d 83, a case concerning the Mortgage Electronic Registration System Inc. (MERS). In 2014, the Court of Appeals decided *Trujillo v. Northwest Trustee Services, Inc.*, 181 Wn. App. 484, 326 P.3d 768 (2014), *rev'd in part*, 183 Wn.2d 820. We subsequently issued a decision in *Lyons v. U.S. Bank NA*, 181 Wn.2d 775, 336 P.3d 1142 (2014), a case arising in similar circumstances as in *Trujillo*. We then granted the petition for review in *Trujillo*, 182 Wn.2d 1020 (2015), and set oral arguments on the same day as in this case.[13]

### a. *Bain*

In *Bain*, we considered three certified questions concerning MERS. MERS is a corporation that maintains "a private electronic registration system for tracking ownership of mortgage-related debt" and "is frequently listed as the 'beneficiary' of the deeds of trust that secure its customers' interests in the homes securing the debts." *Bain*, 175 Wn.2d at 88; *see also id.* at 94-98. The first certified question,

---

[13] We recently issued our decision in *Trujillo*, reversing the Court of Appeals and holding, consistent with *Lyons*, that a trustee may not rely on an ambiguous declaration as to whether the beneficiary is the actual holder of a note. *Trujillo*, 183 Wn.2d at 826-27.

relevant here, asked "whether MERS [can be] a lawful beneficiary . . . if it does not hold the promissory notes secured by the deeds of trust." *Id.* at 89.

We answered the question no. *See id.* at 91 ("CERTIFIED QUESTIONS: 1. Is [MERS] a lawful 'beneficiary' within the terms of the [DTA, RCW] 61.24.005(2), if it never held the promissory note secured by the deed of trust? [Short answer: No.]" (third alteration in original)), 120 ("CONCLUSION[:] Under the deed of trust act, the beneficiary must hold the promissory note and we answer the first certified question 'no.'"). *Bain* thus recognized that holding the note is essential to beneficiary status. *Id.* This conclusion was primarily based on a plain reading of the definition of "beneficiary" in the statute. *See id.* at 98-99. We reasoned the DTA "recognizes that the beneficiary of a deed of trust at any one time might not be the original lender. The act gives subsequent holders of the debt the benefit of the act by defining 'beneficiary' broadly as 'the holder of the instrument or document evidencing the obligations secured by the deed of trust.'" *Id.* at 88 (quoting RCW 61.24.005(2)). The *Bain* opinion rejected various counterarguments and supported its primary reason in various ways, *see id.* at 98-110,[14] and its conclusion is clear.

---

[14] Two of *Bain*'s supporting rationales are relevant here. First, *Bain* concluded that the beneficiary must hold the note for DTA purposes in order to harmonize the DTA with article 3 of the UCC because holding a note triggers PETE status under Article 3, RCW 62A.3-301(i), and beneficiary status under RCW 61.24.005(2). *See Bain*, 175 Wn.2d at 103-04. Second, *Bain* supported its holding that the beneficiary must hold the note by referencing the FFA and recognizing that noteholders have the authority to modify a note. *See id.* at 103 ("[I]f the legislature understood 'beneficiary' to mean 'noteholder,' then [the FFA's findings] make[] considerable sense" because the legislature "was attempting to create a framework where the stakeholders could negotiate a deal in the face of changing conditions.").

"Simply put, if MERS does not hold the note, it is not a lawful beneficiary." [15] *Id.* at 89.

We follow *Bain*'s affirmation of the plain language of the definition of beneficiary in RCW 61.24.005(2). That statute defines a beneficiary as "the holder of the instrument" and makes no mention of ownership. RCW 61.24.005(2). Consistent with article 3's recognition that a holder of a note is entitled to enforce the note, we adhere to *Bain*'s holding that RCW 61.24.005(2) requires the beneficiary be the holder of the note. *See Bain*, 175 Wn.2d at 91, 120. To conclude otherwise—i.e., to hold that the "beneficiary" for purposes of the mediation exemption statute, RCW 61.24.166, is the owner and *not* the note holder—would undermine *Bain*'s core rationale that rested on the definition of a beneficiary in RCW 61.24.005(2) as the note holder. [16]

---

[15] Brown quotes statements from *Bain* that casually refer to ownership of the note. Br. of Appellant at 18, 30. The quotes are taken out of context from *Bain*'s general background section on the DTA and in the analysis of the second certified question in *Bain*, which is not at issue here.

[16] Our recent decision in *Cashmere Valley Bank*, 181 Wn.2d 622, reinforces what we have said about the distinction between an owner of a note and a holder of a note. We held there that merely because an institution has a right to the economic benefits of mortgage-backed securities (i.e., is the owner of the mortgage notes or is a trust beneficiary where the settlor of the trust owns the notes) does not necessarily mean the institution has "any legal recourse to the underlying trust assets in the event of default." *Id.* at 625. We further recognized an institution could be the person entitled to enforce the mortgage note, the PETE, even though it was not the owner. *Id.* at 626 n.4 (noting that when a lender sells a mortgage note on the secondary market, the "lender may continue servicing the mortgage for a fee" and "in the event of the borrower's default, the lender may foreclose on the property and pass along proceeds from the sale, less the lender's fee or share, to the buyer"), 636 (recognizing that when the trustee of a pool mortgage-backed securities *holds* the mortgage notes on behalf of the owner of the mortgage notes, the trustee can foreclose), 641 (similar).

b. *Trujillo* and *Lyons*

In *Trujillo*, a homeowner claimed the trustee violated its duty of good faith under RCW 61.24.010(4) when the trustee relied on a beneficiary declaration to satisfy RCW 61.24.030(7)(a). The declaration said the purported beneficiary, Wells Fargo, was "'the actual holder of the promissory note . . . evidencing the . . . loan *or* has requisite authority under RCW 62A.3-301 to enforce said [note].'" *Trujillo*, 181 Wn. App. at 488 (emphasis added) (first and third alterations in original). The Court of Appeals synthesized the concepts of "beneficiary," *id.* at 495-97, "owner," *id.* at 497-501, and "holder," *id.* at 501-02. It concluded, "RCW 61.24.030(7)(a), properly read, does not require Wells Fargo to also be the 'owner' of the note. Rather, it requires that a person entitled to enforce a note be a holder and need not also be an owner." *Id.* at 502. The Court of Appeals thus held the trustee did not violate its duty of good faith when it relied on this declaration.

We decided *Lyons* shortly afterwards. As relevant here, in *Lyons* we considered whether a trustee violated its duty of good faith when it relied on a beneficiary declaration similar to the one in *Trujillo* to satisfy RCW 61.24.030(7)(a). The declaration in *Lyons* said the purported beneficiary was the "actual holder of the promissory note . . . *or* has requisite authority under RCW 62A.3-301 to enforce said obligation." *Lyons*, 181 Wn.2d at 780 (emphasis added). We held that "the declaration at issue here does not comply with RCW 61.24.030(7)(a)," because it is ambiguous concerning which of the three grounds under RCW 62A.3-301 the purported beneficiary invoked. *Id.* at 791. We held a purported beneficiary satisfies

RCW 61.24.030(7)(a) by providing a declaration stating it is the "actual holder" of the note. But, by RCW 61.24.030(7)(a)'s terms, we recognized a purported beneficiary does *not* satisfy RCW 61.24.030(7)(a) by stating that it meets the second or third method of obtaining PETE status under RCW 62A.3-301(ii) and (iii). We thus remanded the case for trial, instructing the trustee that it must satisfy RCW 61.24.030(7)(a) "but may not just rely on this ambiguous declaration." *Id.* at 791.[17]

As relevant here, our holdings in *Lyons* and *Trujillo* confirm that a trustee can rely on a declaration consistent with its duty of good faith if the declaration unambiguously states the beneficiary is the actual holder.[18] Here, the declaration does not suffer from the ambiguity at issue in *Lyons* and *Trujillo*. It states that "M&T Bank is the actual holder of the promissory note." AR at 169. It does not have a following "or . . . " provision that created ambiguity about whether the declarations at issue in *Lyons* and *Trujillo* complied with RCW 61.24.030(7)(a)'s terms. Because these cases turned on ambiguity in the declaration that is not present here, they do not control our analysis.

---

[17] As noted, our recent decision in *Trujillo* is consistent with this holding.

[18] Accordingly, Brown's argument that the Department failed to act in good faith because it knew Freddie Mac was the owner of the note is not well taken. *Cf.* RCW 61.24.030(7)(b) (providing a trustee cannot rely on a beneficiary declaration if the trustee has violated its duty of good faith); RCW 61.24.163(5)(c) (incorporating the method of proving beneficiary status under RCW 61.24.030(7)(a) for the purpose of FFA mediation). The situation would be different if the Department had information contradicting M&T Bank's declaration that it was the actual holder of the note, but no one contested the truth of M&T Bank's declaration. That declaration was therefore sufficient proof as required by RCW 61.24.030(7)(a) and RCW 61.24.163(5)(c).

4. *Legislative History*

The legislative history behind the enactment of RCW 61.24.030(7)(a) sheds some light on the legislature's intent. *See* LAWS OF 2009, ch. 292, § 8; *see also* Suppl. Br. of Pet'r at 12-14, *Trujillo v. Nw. Tr. Servs., Inc.*, No. 90509-6 (Wash. Aug. 20, 2015) (Suppl. Br. of Pet'r). That provision was enacted in 2009, along with the due diligence communication procedures that are required before a notice of default may be issued. LAWS OF 2009, ch. 292.

The legislative staff's summary of public testimony identifies the apparent impetus for RCW 61.24.030(7)(a): "Few homeowner know who has *the authority to negotiate with them* due to loan repackaging. The entity *owning* the loan should *have to present the paper* to prove they have *authority to foreclose.*" S.B REP. ON S.B. 5810, at 4, 61st Leg., Reg. Sess. (Wash. 2009) (emphasis added), http://lawfilesext.leg.wa.gov/biennium/2009-10/Pdf/Bill%20Reports/Senate/5810 %20SBA%20FIHI%2009.pdf.

With RCW 61.24.030(7)(a), the legislature attempted to resolve this problem of homeowners not knowing who has the authority to enforce and modify their notes by including *both* the concepts of owning and holding the note.[19] Yet in cases where the owner and the holder of the note are different entities, as here, the provision is ambiguous. *Cf.* Dale A. Whitman & Drew Milner, *Foreclosing on Nothing: The Curious Problem of the Deed of Trust Foreclosure without Entitlement To Enforce*

---

[19] A prior bill of what later became RCW 61.24.030(7)(a) focused only on the holder of the note, while the enacted version focuses on both the owner and the holder. *See* Suppl. Br. of Pet'r at 12-14.

*the Note*, 66 ARK. L. REV. 21, 26 & n.23 (2013) (stating that RCW 61.24.030(7)(a) was subject to "considerable confusion" because the statute "conflates 'owner' and 'holder'").

When we construe an ambiguous statute, we adopt the "'interpretation which best advances the perceived legislative purpose.'" *Dumas v. Gagner*, 137 Wn.2d 268, 286, 971 P.2d 17 (1999) (quoting *Wichert v. Cardwell*, 117 Wn.2d 148, 151, 812 P.2d 858 (1991)). The legislature's clear purpose was to ensure the party with the *authority to enforce and modify the note* is the party engaging in mediation and foreclosure. As discussed above, the holder of the note, the PETE, is the person with the authority to enforce and modify the note.

We hold that a party's undisputed declaration submitted under penalty of perjury that it is the holder of the note satisfies RCW 61.24.030(7)(a)'s requisite to a trustee sale and RCW 61.24.163(5)(c)'s proof of beneficiary provision for FFA mediation. M&T Bank submitted such a declaration. It is therefore the beneficiary for the purposes of the mediation exemption provision, RCW 61.24.166. M&T Bank is exempt from mediation because it is a federally insured depository institution that has certified under penalty of perjury that it has been a beneficiary in less than 250 residential Washington homes in the last year. *Id.* The Department correctly denied Brown's request for mediation under the FFA.

### B. APA, ch. 34.05 RCW

Because Brown's petition for judicial review of the Department's denial of her mediation request arises under the APA, ch. 34.05 RCW, we must address the

impact of our interpretation of the DTA in that context. Appellate courts review an agency's decision de novo and apply the APA "'directly to the record before the agency.'" *Wash. Indep. Tel. Ass'n v. Wash. Utils. & Transp. Comm'n*, 149 Wn.2d 17, 24, 65 P.3d 319 (2003) (quoting *Tapper v. Emp't Sec. Dep't*, 122 Wn.2d 397, 402, 858 P.2d 494 (1993)).

Under the APA, a plaintiff may petition for judicial review concerning the lawfulness of an agency's promulgated rules and regulations, RCW 34.05.570(2), of an agency's orders in adjudicative proceedings, *id.* at (3), and of "other agency action," *id.* at (4). The parties agree that the Department's action is neither a regulation nor an adjudicative order but is "other agency action."

RCW 34.05.570(4) governs judicial review of "other agency action." An agency violates that statute when the agency "fail[s] to perform a duty that is required by law," *id.* at (4)(b), when the agency's actions are "[u]nconstitutional," *id.* at (c)(i), when the agency's actions are "[o]utside the statutory authority of the agency," *id.* at (c)(ii), when the agency's actions are "[a]rbitrary or capricious," *id.* at (c)(iii), and when the agency's actions are "[t]aken by persons who were not properly constituted as agency officials lawfully entitled to take such action," *id.* at (c)(iv).

Brown challenges the Department's denial of her request for mediation on all of the grounds except the last. In her three nonconstitutional challenges, Brown simply contends she "should prevail if the Court concludes that [the Department's] interpretation of the FFA was erroneous." Reply Br. of Appellant at 13; *see also*

*generally* Br. of Appellant at 34-40; Reply Br. of Appellant at 13-16. Because the Department correctly interpreted the DTA, as described above, the Department did not violate the APA on these three grounds.

Brown's final challenge is that the Department's interpretation of the DTA was unlawful agency action under RCW 34.05.570(4)(c)(i) because it was unconstitutional. Brown contends the Department's interpretation of the DTA, which we have adopted, violates the equal protection and due process clauses of the United States and Washington constitutions. U.S. CONST. amend. XIV, § 1; WASH. CONST. art. I, §§ 3, 12. Under our interpretation of the DTA, the Department correctly grants or denies mediation based on whether the note holder was the beneficiary in more than 250 residential foreclosures in the state of Washington in the prior year. So interpreted, Brown argues the DTA treats similarly situated homeowners—whose notes are owned by Freddie Mac or Fannie Mae—differently, with "no rational basis." Br. of Appellant at 45. According to Brown, access to mediation turns on "an irrelevant factor, the identity of the servicer," and is a "random lottery." *Id.* at 45-46.

We reject this challenge. As Brown acknowledges, we review the constitutionality of the DTA provisions at issue under the highly deferential standard of rationality review because the provisions are economic legislation that do not involve fundamental rights. *Id.* at 44.[20] Accordingly, "the legislative classification

---

[20] For this reason, Brown's equal protection and due process arguments are identical in substance, and we do not analyze them discretely. Brown has not identified relevant

will be upheld unless it rests on grounds wholly irrelevant to achievement of legitimate state objectives," *State v. Shawn P.*, 122 Wn.2d 553, 561, 859 P.2d 1220 (1993), and "a statutory classification will be upheld if any conceivable state of facts reasonably justifies the classification," *id.* at 563-64. A statute is not invalid because it is over- or underinclusive in achieving the legislature's purpose unless no conceivable facts and justifications save the law from being wholly irrational. *See Am. Legion Post No. 149 v. Dep't of Health*, 164 Wn.2d 570, 609-10, 192 P.3d 306 (2008).

Brown is incorrect that the Department's interpretation turns on an "an irrelevant factor, the identity of the servicer." Br. of Appellant at 45. As we have explained, that factor is relevant because the servicer holds the note, has authority to enforce the note, has authority to modify the note, is the person to whom the borrower owes her obligation, and is the person to whom the borrower pays to discharge her obligation. *See supra* pp. 12-19. The Department's scheme draws a distinction that subjects to mediation only the biggest servicers—i.e., those that were beneficiaries in more than 250 residential foreclosures in the prior year. RCW 61.24.166. The legislature conceivably perceived such servicers to be a major contributor to the foreclosure crisis and conceivably decided that smaller contributors to the foreclosure crisis ought not bear the burdens of mediation. Of course, all numerical cutoffs have arbitrariness. But under rationality review of

---

distinctions between the state and federal constitutions in her challenge, so we decline to assign differences to them here.

economic legislation, "'[i]t is no requirement of equal protection that all evils of the same genus be eradicated or none at all,'" *Am. Legion Post No. 149*, 164 Wn.2d at 609-10 (quoting *O'Hartigan v. Dep't of Pers.*, 118 Wn.2d 111, 124, 821 P.2d 44 (1991)), and the legislature may enact laws that "take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind," *Williamson v. Lee Optical of Okla.*, 348 U.S. 483, 489, 75 S. Ct. 461, 99 L. Ed. 563 (1955). We reject Brown's constitutional challenge.

## III. CONCLUSION

We hold a party satisfies the proof of beneficiary provisions RCW 61.24.030(7)(a) and RCW 61.24.163(5)(c) when it submits an undisputed declaration under penalty of perjury that it is the actual holder of the promissory note. That party is the beneficiary for the purposes of the mediation exemption provision, RCW 61.24.166, because the note holder is the party entitled to modify and enforce the note. The Department's denial of Brown's request for mediation did not violate the APA. We affirm the superior court's judgment.

_____
Stern, J.

WE CONCUR:

_____        _____
Madsen, C.J.                                        Wiggins, J.

_____        _____
Johnson, J.                                          González, J.

_____        _____
Owens, J.                                            Gordon McCloud, J.

_____        _____
Fairhurst, J.                                         Yu, J.