IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| ALICE LOPEZ, | ) | |
| | ) | No. 34968-3-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| JPMORGAN CHASE & CO., a New York | ) | |
| Company; JPMORGAN CHASE BANK, | ) | |
| NA, an Illinois National Association; | ) | |
| DEUTSCHE BANK NATIONAL TRUST | ) | |
| CO., a California Company, as Trustee on | ) | |
| behalf of the holders of WAMU pass- | ) | |
| through Certificates, Series 2005-AR6; | ) | |
| NORTHWEST TRUSTEE SERVICES, | ) | |
| INC., a Washington Corporation; and John | ) | |
| Does 1-10, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

SIDDOWAY, J. — Alice Lopez appeals the summary judgment dismissal of her

challenge to the validity of the nonjudicial foreclosure of the deed of trust on her home.[1]

She does not dispute that she was in default in payment of the note secured by the deed of

---

[1] Claims against the defendants under the Consumer Protection Act (CPA), chapter 19.86 RCW, were also asserted but dismissal of the CPA claims is not a subject matter of her brief. We do not address it further. *See* RAP 10.3(a)(6).

trust, but raises now-familiar challenges to the authority of the eventual holder of her note and the last-appointed trustee to foreclose. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

In 2004, Alice Lopez borrowed $264,000 from Washington Mutual Bank (WaMu), evidenced by a promissory note. The note was secured by a deed of trust on her home in Vancouver, Washington.

In 2008, the Office of Thrift Supervision closed WaMu and appointed the Federal Deposit Insurance Corporation (FDIC) as receiver for the bank.

About four years later, in July 2012, the FDIC assigned the deed of trust to Deutsche Bank National Trust Company (Deutsche) as trustee for a real estate mortgage investment conduit (REMIC), WAMU Mortgage Pass-Through Certificate Series 2005-AR6 (Trust). A REMIC is a trust account into which mortgage-backed securities and/or whole mortgage loans are pooled, for the purpose of reconfiguring their principal and interest payments into securities having the risk and related investment characteristics desired by investors. *See Cashmere Valley Bank v. Dep't of Revenue*, 181 Wn.2d 622, 627 & n.6, 334 P.3d 1100 (2014). Assignment of the deed of trust to the REMIC was recorded on August 7, 2012.

In August 2012, Northwest Trustee Services (Northwest), acting as Deutsche's agent, sent Ms. Lopez a notice of default. According to the notice, Ms. Lopez owed $291,927.37 on the note as of the date of the notice. Within the next couple of months,

2

Deutsche took other steps in furtherance of nonjudicial foreclosure: it appointed Northwest as successor trustee under the deed of trust (the original trustee had been Fidelity National Title) and executed a proof of beneficiary declaration stating that as trustee of the REMIC, it was the holder of the promissory note, an averment on whose truth and accuracy Northwest could rely.

Northwest took steps to conduct a foreclosure sale over the next three years, but Ms. Lopez prevented the sale from occurring by filing three successive bankruptcies. Finally, in August 2015, Northwest filed the amended notice of trustee's sale that triggered Ms. Lopez to file this lawsuit. She filed suit in October 2015, challenging the legality of the foreclosure and asserting a violation of the CPA. She moved, unsuccessfully, to enjoin the sale and then moved, unsuccessfully, for discretionary review by this court. The property was sold at public auction on November 13, 2015.

A couple of months later, the defendants moved for summary judgment dismissing Ms. Lopez's complaint. The motions were granted and Ms. Lopez appeals.

## ANALYSIS

An order granting summary judgment is reviewed de novo, "considering the evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving party." *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c).

3

No. 34968-3-III
*Lopez v. JPMorgan Chase & Co., et al.*

Ms. Lopez identifies four issues on appeal that she contends made summary

judgment improper. We set them forth as stated by Ms. Lopez's opening brief.

*Issue 1:* If a court decision irreconcilably conflicts with a constitutionally enacted statute, must the court decision yield?

Ms. Lopez disagrees with the Washington Supreme Court's decision in *Brown v.*

*Dep't of Commerce*, 184 Wn.2d 509, 359 P.3d 771 (2015). In *Brown*, the court construed

the following language in RCW 61.24.030(7)(a), which addresses one of the statutory

requisites to a trustee's sale in the nonjudicial foreclosure context:

> [F]or residential real property, before the notice of trustee's sale is recorded, transmitted, or served, the trustee shall have proof that the *beneficiary* is the *owner* of any promissory note or other obligation secured by the deed of trust. *A declaration by the beneficiary* made under the penalty of perjury stating that the beneficiary is the *actual holder* of the promissory note or other obligation secured by the deed of trust shall be sufficient proof as required under this subsection.

(Emphasis added.) The court held that the holder of a promissory note—as the party

entitled to enforce the note—is the beneficiary, regardless of whether the holder is also

the owner of the note. *Brown*, 184 Wn.2d at 546.

Our Supreme Court's decision construing a statute cannot conflict with the statute

as suggested by Ms. Lopez's issue statement, because it is within the courts'

constitutional authority to determine what a statute means. *Hale v. Wellpinit Sch. Dist.*

*No. 49*, 165 Wn.2d 494, 505-06, 198 P.3d 1021 (2009) (citing, among other authority,

4

No. 34968-3-III
*Lopez v. JPMorgan Chase & Co., et al.*

*Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177, 2 L. Ed. 60 (1803)). This is understood by the legislature itself, which—even when it has disagreed with a Supreme Court decision, amended the law, and provided for retroactive application—has nonetheless recognized that the Supreme Court's construction controls the statute's meaning at least from the time of the court's decision until the effective date of the amendment. *See id.* at 502 (discussing legislative action to statutorily define "disability"). The court decision does not "yield."

> *Issue Two:* *If an assignment of a note and deed of trust is void ab initio, not voidable, may Plaintiff-Appellant assert the invalidity of the assign[ee's] ownership and the beneficiary status [of] the assignee?*
>
> *Issue Four:* *If the acceptance of an assignment of a note and deed of trust into a trust by the trustee is void, may Plaintiff-Appellant [a]ssert the void assignment as a basis for denying the trustee the right to foreclose?*

Ms. Lopez's second and fourth identified issues relate to her contention that the FDIC's assignment of her deed of trust to the REMIC in 2005 was void. She contends it was void for three reasons: (1) it was untimely under the REMIC's pooling and service agreement, (2) it violated federal statutes relating to REMICs, and (3) it was a conveyance of property other than by deed. She recognizes that it is essential that assignment be void, not just voidable, in order for her to have standing. As a nonparty to the assignment, she has no standing to assert matters that would merely make that

5

assignment voidable by the FDIC or the REMIC.[2] Ms. Lopez's second and fourth

assignments of error fail because she does not demonstrate that the assignment was void.

*Pooling and service agreement*

Ms. Lopez contends the assignment to the Trust was void because it was untimely

under the REMIC's pooling and service agreement (PSA), which she alleges in her

complaint had a "closing date" of April 26, 2005. Clerk's Papers (CP) at 7. The PSA is

not in the record on appeal and the defendants answered the complaint, with respect to

the allegation of the closing date, that the PSA "speaks for itself." CP at 135, 142. The

PSA might well have stated that the trust would acquire no assets after a 2005 closing

date: the name of the REMIC includes "2005," postclosing asset acquisitions can have

---

[2]    "Nothing can be founded upon an act or transaction that is absolutely void, but, from such as are merely voidable, good titles may spring. And every stranger may take advantage of a void act, but not so of a voidable one."

"A voidable sale passes the legal title subject to be avoided by a direct proceeding for that purpose, and it is not subject to a collateral attack. It may be ratified. But a void sale conveys no title, is incapable of ratification, and may be shown to be a nullity even in a collateral proceeding."

*Murray v. Briggs*, 29 Wash. 245, 257, 69 P. 765 (1902) (citation omitted) (quoting 28 AM. & ENG. ENC. LAW 474 (1895); *Moody's Heirs v. Moeller*, 72 Tex. 635, 10 S.W. 727 (1889)); *see also Yvanova v. New Century Mortg. Corp.*, 62 Cal. 4th 919, 933, 365 P.3d 845, 199 Cal. Rptr. 3d 66 (2016) (stating this is the majority rule with respect to a borrower's right to challenge an assignment or appointment); *Reinagel v. Deutsche Bank Nat. Tr. Co.*, 735 F.3d 220, 225 (5th Cir. 2013); Eric A. Zacks & Dustin A. Zacks, *A Standing Question: Mortgages, Assignment, and Foreclosure*, 40 J. CORP. L. 705, 721 n.94 (2015).

negative tax consequences for a REMIC, and the defendants do not contest the closing date in their briefing. But without a copy of the PSA, we will not assume that such a closing date, even if it exists, would make a post-closing transaction void rather than voidable.

It would be unusual to provide that a future transaction, even if not permitted by a contract, would be void. Making such a transaction voidable ordinarily provides just as much protection as making it void. And making such a transaction merely voidable provides parties with the flexibility to address unforeseen events. It is therefore more likely that any post-closing asset acquisition that violated the PSA would be voidable under the agreement rather than void.

In addition to presenting an inadequate record, the only two cases cited by Ms. Lopez as holding that assignment of an asset after a REMIC's closing date is void do not help her. She cites *Glaski v. Bank of America*, 218 Cal. App. 4th 1079, 1083, 160 Cal. Rptr. 3d 449 (2013) and *Yvanova v. New Century Mortgage Corp.*, 62 Cal. 4th 919, 365 P.3d 845, 199 Cal. Rptr. 3d 66 (2016).

In *Glaski*, which involved a REMIC trust created under New York law, the California court relied for New York law on *Wells Fargo Bank, NA v. Erobobo*, 39 Misc. 3d 1220(A), 972 N.Y.S.2d 147 (Sup. Ct. 2013) (unpublished opinion), *rev'd*, 127 A.D.3d 1176, 9 N.Y.S.3d 312 (2015). *Glaski* held, as had the intermediate New York court in *Erobobo*, that transfer of a loan into a trust in violation of the trust's pooling and service

7

agreement was void under the New York Estates, Powers and Trusts Law § 7-2.4. 218

Ca. App. 4th at 1095-96. The intermediate appellate court's decision in *Erobobo* was

later reversed, however. *See Erobobo*, 127 A.D.3d at 1178. New York's highest court

found that a mortgagor like Ms. Lopez lacks standing to challenge a violation of a

pooling and servicing agreement:

> In any event, Erobobo, as a mortgagor whose loan is owned by a trust, does
> not have standing to challenge the plaintiff's possession or status as
> assignee of the note and mortgage based on purported noncompliance with
> certain provisions of the [pooling and servicing agreement].

*Id.* at 1178. Since the intermediate appellate court was wrong in *Erobobo*, then *Glaski*,

having relied on the intermediate appellate court's decision, was wrong as well.

And California decisions subsequent to *Yvanova* have held that the court in

*Yvanova* "did not consider or decide whether the assignment of the plaintiff's deed of

trust to the investment trust after the trust's closing date rendered the assignment void,

and not merely voidable." *Yhudai v. Impac Funding Corp.*, 1 Cal. App. 5th 1252, 1257,

205 Cal. Rptr. 3d 680 (2016), *review denied*, No. S327080 (Cal. Oct. 26, 2016). Cases

considering *Yvanova* and *Glaski* have concluded that an assignment to a trust after the

trust's closing date is merely voidable. *See Yhudai*, 1 Cal. App. 5th 1258 (listing cases

rejecting the holding of the intermediate appellate court in *Erobobo*); *Saterbak v.*

*JPMorgan Chase Bank, NA*, 245 Cal. App. 4th 808, 815, 199 Cal. Rptr. 3d 790 (2016).

Ms. Lopez therefore presented neither evidence nor legal authority in support of her

position that the FDIC's assignment was in violation of the REMIC's PSA and thereby void.

*Federal statutes dealing with REMICs*

Ms. Lopez next argues that federal statutes dealing with REMICs "prohibit" the assignment made by the FDIC to the REMIC. Br. of Appellant at 18-20. They do not. They impose a tax on what are defined as "prohibited transactions." The very fact that they impose a tax on such transactions demonstrates that such transactions can, and presumably will, take place.

REMICs benefit from protection from double taxation of income; under 26 U.S.C. 860A, the general rule is that a REMIC "shall not be subject to taxation under this subtitle" and, instead, "[t]he income of any REMIC shall be taxable to the holders of interests in such REMIC." 26 U.S.C. 860A(a), (b).

Subsection 860F includes "[o]ther rules" applicable to REMICs, one of which is the taxation ramifications of "prohibited transactions":

> There is hereby imposed for each taxable year of a REMIC a tax
> equal to 100 percent of the net income derived from prohibited transactions.

26 U.S.C. 860F(a)(1). "Prohibited transactions" include "any income attributable to any asset which is neither a qualified mortgage nor a permitted investment." 26 U.S.C. 860F(a)(2)(B). The definitions of "qualified mortgage" and "permitted investments" would exclude, generally, mortgages acquired in 2012 by a REMIC all of whose interests

were issued in 2005.

All this shows, however, is that if the REMIC in this case closed its issuance of interests in 2005, then the net income from the foreclosure of a mortgage assigned to it in 2012 would appear to be a "prohibited transaction" on which a 100 percent tax would be imposed. None of the parties has attempted to explain why, if that were the case, the REMIC would gain anything by accepting the assignment. From the point of view of the federal government, however, the assignment is not illogical: the amount ultimately realized from a mortgage the FDIC acquired in bailing out a failed bank ends up being paid to the U.S. Treasury through a 100 percent tax. We do not need to understand the motivation for the assignment to conclude that it does not afford a basis for Ms. Lopez to avoid responsibility for the $291,927.37 owed on her note.

*Conveyance other than by deed*

Ms. Lopez's final argument is that the assignment was void because it violates the statutory requirement that all interests in real property be transferred by deed.

RCW 64.04.010 provides: "Every conveyance of real estate, or any interest therein, and every contract creating or evidencing any encumbrance upon real estate, shall be by deed." Over a century ago, interpreting nearly identical language, the Washington Supreme Court held that an assignment of a mortgage is not subject to this requirement:

Gen. Stat. § 1422, prescribes that "all conveyances of real estate, or of any

10

interest therein, and all contracts creating or evidencing any encumbrance upon real estate, shall be by deed." It is not necessary to say that an assignment of a mortgage is none of these.

*Howard v. Shaw*, 10 Wash. 151, 156, 38 P. 746, (1894). As was explained in *Bain v. Metropolitan Mortgage Group., Inc.*, 175 Wn.2d 83, 285 P.3d 34 (2012), which involved a deed of trust rather than a mortgage:

> In Washington, "[a] mortgage creates nothing more than a lien in support of the debt which it is given to secure." *Pratt v. Pratt*, 121 Wash. 298, 300, 209 P. 535 (1922) (citing *Gleason v. Hawkins*, 32 Wash. 464, 73 P. 533 (1903)); *see also* [18 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: TRANSACTIONS § 18.2, at 305 (2d ed. 2004)]. Mortgages come in different forms, but we are concerned here only with mortgages secured by a deed of trust on the mortgaged property. These deeds do not convey the property when executed; instead, "[t]he statutory deed of trust is a form of a mortgage." 18 STOEBUCK & WEAVER, *supra*, § 17.3, at 260. "More precisely, it is a three-party transaction in which land is conveyed by a borrower, the 'grantor,' to a 'trustee,' who holds title in trust for a lender, the 'beneficiary,' as security for credit or a loan the lender has given the borrower." *Id.* Title in the property pledged as security for the debt is not conveyed by these deeds, even if "on its face the deed conveys title to the trustee, because it shows that it is given as security for an obligation, it is an equitable mortgage." *Id.* (citing GRANT S. NELSON & DALE A. WHITMAN, REAL ESTATE FINANCE LAW § 1.6 (4th ed. 2001)).

*Bain*, 175 Wn.2d at 92-93. *See also Deutsche Bank Nat'l Tr. Co. v. Slotke*, 192 Wn. App. 166, 177-78, 367 P.3d 600 (2016), *review denied*, 185 Wn.2d 1037, 377 P.3d 746 (2016) (observing that ordinarily the transfer of the debt secured by a mortgage operates as an equitable assignment of the mortgage).

The FDIC's assignment did not have to be by deed.

11

*Issue 3: In the absence of proof of ownership of a mortgage note secured by a deed of trust, is the alleged holder of the note authorized by Washington law to enforce the deed of trust?*

The Washington Supreme Court held in *Brown*:

[T]he holder of the note [is] the beneficiary for the purposes of the [foreclosure fairness act] mediation exemption statute . . . . We further hold that a party's undisputed declaration submitted under penalty of perjury that the party is the holder of the note satisfies the [Deed of Trust Act's] proof of beneficiary provisions, RCW 61.24.030(7)(a) and RCW 61.24.163(5)(c). The holder of the note satisfies these provisions and is the beneficiary because the legislature intended the beneficiary to be the party who has authority to modify and enforce the note.

184 Wn.2d at 514.

We have already explained why we ignore Ms. Lopez's disagreement with the holding in *Brown*. She also argues that *Brown* is distinguishable from her case. She appears to place significance on the facts that (1) *Brown* involved a known owner of the note (the Federal Home Loan Mortgage Corporation) and (2) in *Brown*, "consideration" had been given for the transfer of the note. Reply Br. at 20. But neither of these facts was relevant to the court's holding. The holding, which turned on the court's conclusion that Washington's Uniform Commercial Code, Title 26A RCW, authorizes division of note ownership from note enforcement and allows the holder to enforce the note, and the court's recognition of the importance of this division of ownership and enforcement rights to conventional residential lending practice. *Id.* at 520-23, 525-26.

Finally, Ms. Lopez argues that in *Brown*, the proof of authority to enforce that a

12

No. 34968-3-III
*Lopez v. JPMorgan Chase & Co., et al.*

trustee must have in hand before recording the notice of trustee's sale was satisfied by an

"*undisputed* declaration under penalty of perjury that [the party] is the actual holder of

the promissory note"—whereas she clearly disputed Deutsche's declaration, as evidenced

by her lawsuit. *Brown*, 184 Wn.2d at 547 (emphasis added). Here, the defendants

demonstrated at summary judgment that Deutsche was the actual holder of the

promissory note by having Deutsche bring the original promissory note to the summary

judgment hearing. This is proof that Deutsche was the actual holder of the promissory

note that is even better than an undisputed declaration.

*Brown* is materially indistinguishable from this case. The holder of the note is the

beneficiary under a deed of trust that secures it, and is entitled to enforce without proof of

ownership.

We affirm the dismissal of Ms. Lopez's complaint.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

Siddoway, J.

WE CONCUR:

Korsmo, J.

Pennell, J.

13