FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2017 JUN -5 AM 8: 51



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| JOHN P. HURNEY and LESLIE A. HURNEY, | ) ) ) | No. 75043-7-I |
| Appellants, | ) ) ) ) | DIVISION ONE |
| v. | ) ) | |
| HSBC BANK, USA, N.A., as Trustee for Merrill Lynch Alternative Note Asset Trust, Series 2007-0AR2; ONEWEST BANK, F.S.B.; | ) ) ) ) ) | UNPUBLISHED OPINION |
| Respondents, | ) ) | |
| INDYMAC BANK, N.A.; REGIONAL TRUSTEE SERVICES CORPORATION; and Doe Defendants 1 through 20, inclusive, | ) ) ) ) ) | |
| Defendants. | ) | FILED: June 5, 2017 |

SCHINDLER, J. — John and Lesley Hurney appeal summary judgment dismissal of their lawsuit and claims against HSBC Bank USA NA and OneWest Bank FSB under the Consumer Protection Act, chapter 19.86 RCW. Because the Hurneys did not meet their burden to show any genuine issue of material fact, we affirm.

## FACTS

In February 2005, John and Lesley Hurney (collectively, Hurney) obtained a loan from IndyMac Bank FSB. Hurney executed an adjustable rate note, dated February 22,

2005, in the principal amount of $825,000. The note designates IndyMac as the "Lender" and "Note Holder." The note requires Hurney to make monthly payments. The failure to make payments accelerates the date the debt is due. The note was secured by a deed of trust on Hurney's residential property in Kirkland. The deed of trust is also dated February 22, 2005 and is signed by Hurney as the borrower. The deed of trust identifies IndyMac as the lender, Ticor Title Insurance Company as trustee, and Mortgage Electronic Registration Systems Incorporated (MERS) as "nominee for Lender and Lender's successors and assigns" as the beneficiary.

In January 2007, Hurney and IndyMac agreed to a loan modification. As a part of the agreement, Hurney agreed to increase the principal amount of the loan to $850,186.

In March 2007, IndyMac sold the Hurney loan to a securitized trust, "Merrill Lynch Alternative Note Asset Trust, Series 2007-OAR2." HSBC Bank USA NA serves as trustee for the trust. IndyMac continued to service the loan. IndyMac endorsed the promissory note to HSBC and then in blank.[1]

In July 2008, the United States Department of the Treasury Office of Thrift Supervision closed IndyMac Bank and appointed the Federal Deposit Insurance Corporation (FDIC) as receiver. FDIC then sold assets of IndyMac to OneWest Bank FSB. In March 2009, OneWest purchased the loan servicing rights to the Hurney loan.

---

[1] Neither endorsement is dated, but IndyMac's blank endorsement was made on an "allonge." An allonge is a paper attached to a negotiable instrument for purposes of receiving further endorsements. BLACK'S LAW DICTIONARY 88 (9th ed. 2009); see UCC § 3-204(a) (defining "indorsement"). A "blank indorsement" is an endorsement that does not identify a person to whom the instrument is payable. RCW 62A.3-205(b). Hurney does not challenge the banks' position that IndyMac's endorsement to HSBC preceded its blank endorsement on the allonge.

Hurney stopped making payments on the note on December 1, 2009. In March 2010, HSBC initiated nonjudicial foreclosure proceedings and issued a notice of default.[2]

MERS assigned "all beneficial interest" in the note and deed of trust to HSBC by an "Assignment of Deed of Trust" dated March 23, 2010. On the same date, HSBC appointed Regional Trustee Services Corporation (RTS) as successor trustee to the original trustee under the deed of trust, Ticor Title Insurance Company. A corporate officer of OneWest signed the appointment document as "Attorney in Fact" of HSBC. The same OneWest officer also executed an "Affidavit of Holder of Note," identifying HSBC as the "owner of the promissory note" and OneWest as the "current holder" of the note. RTS issued a notice of trustee's sale, setting October 15, 2010 as the date of sale. The assignment, appointment of successor trustee, and notice of trustee's sale were recorded sequentially on July 15, 2010.

Because Hurney filed for bankruptcy, the October 15, 2010 sale did not take place. After the bankruptcy court dismissed the bankruptcy petition, HSBC initiated foreclosure proceedings. On March 4, 2013, RTS issued a notice of default.[3] The notice identified HSBC as the "owner" of the note and OneWest as the loan servicer. Hurney and OneWest participated in foreclosure mediation but Hurney could not secure another loan modification. In February 2014, RTS issued a notice of trustee's sale setting June 27, 2014 as the date of sale.

_____

[2] The 2010 notice of default is not included in the record on appeal.

[3] Hurney mentions that the 2013 notice of default directs them to contact HSBC "c/o ONEWEST BANK, FSB" and provides OneWest Bank's physical address. Hurney also alleges, without elaboration, that the amounts listed to cure the default were incorrect. However, Hurney does not rely on either of these alleged errors as a basis for their Consumer Protection Act claim.

Shortly before the scheduled sale date, Hurney filed this lawsuit against HSBC, OneWest, and others to enjoin the trustee's sale. Hurney also alleged violations of the deeds of trust act, chapter 61.24 RCW; and the Consumer Protection Act (CPA), chapter 19.86 RCW. Because the nonjudicial foreclosure sale did not occur, the statutory 120-day period to complete the sale expired. See RCW 61.24.040(6).

HSBC and OneWest filed a motion for summary judgment. In response, Hurney conceded that except for the CPA claim, dismissal was appropriate. The court granted summary judgment and dismissed the lawsuit, including the CPA claim against HSBC and OneWest.[4]

## ANALYSIS

Hurney contends genuine issues of material fact preclude summary judgment on the CPA claim because HSBC and OneWest violated the deeds of trust act during the course of the attempted nonjudicial foreclosures. Hurney asserts the banks intentionally and repeatedly misrepresented the identity of the holder of the note and presented no evidence that OneWest or HSBC was, at any time, the noteholder. Hurney further asserts the banks committed an unfair and deceptive act by, without authority, appointing a successor trustee to initiate foreclosure.

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). A material fact is one upon which the outcome of the litigation depends. Greater Harbor 2000 v. City of Seattle, 132 Wn.2d 267, 279, 937 P.2d 1082 (1997). We review an order granting summary judgment de novo; all facts and reasonable inferences must be

---

[4] In a separate order, the trial court dismissed Hurney's claims against IndyMac and RTS.

4

considered in the light most favorable to the nonmoving party. Lynott v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 123 Wn.2d 678, 685, 871 P.2d 146 (1994); Greater Harbor, 132 Wn.2d at 279.

Summary judgment is subject to a burden-shifting scheme. Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). The moving party is entitled to summary judgment by submitting affidavits establishing entitlement to judgment as a matter of law. Ranger, 164 Wn.2d at 552. The nonmoving party must then present " 'specific facts which sufficiently rebut the moving party's contentions' " and create a genuine issue of material fact. Ranger, 164 Wn.2d at 552 (quoting Meyer v. Univ. of Wash., 105 Wn.2d 847, 852, 719 P.2d 98 (1986)). The nonmoving party cannot rely either on argumentative assertions that unresolved factual issues remain or on speculation. Ranger, 164 Wn.2d at 552.

In the absence of a completed trustee's sale, a borrower may not bring a claim for damages under the deeds of trust act. Frias v. Asset Foreclosure Servs., Inc., 181 Wn.2d 412, 429, 334 P.3d 529 (2014). However, wrongful conduct during a nonjudicial foreclosure proceeding that does not result in a sale may be the basis for a claim under the CPA. Trujillo v. Nw. Tr. Servs., Inc., 183 Wn.2d 820, 834, 355 P.3d 1100 (2015). To succeed on a CPA claim, Hurney must show:

> (1) [A]n unfair or deceptive act, (2) in trade or commerce, (3) that affects the public interest, (4) injury to the plaintiff in his or her business or property, and (5) a causal link between the unfair or deceptive act complained of and the injury suffered.

Trujillo, 183 Wn.2d at 834-35. A claimant must establish all five elements to prevail. Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc., 162 Wn.2d 59, 74, 170 P.3d 10 (2007). Conduct is "deceptive" under the CPA if it misleads or misrepresents

something of material importance. Walker v. Quality Loan Serv. Corp. of Wash., 176 Wn. App. 294, 318, 308 P.3d 716 (2013). Whether a particular action constitutes a CPA violation is reviewable as a question of law. Leingang v. Pierce County Med. Bureau, Inc., 131 Wn.2d 133, 150, 930 P.2d 288 (1997).

It is well established under Washington law that the holder of a promissory note is entitled to enforce that obligation. Brown v. Dep't of Commerce, 184 Wn.2d 509, 524-25, 359 P.3d 771 (2015); Bain v. Metro. Mortg. Grp., Inc., 175 Wn.2d 83, 104, 285 P.3d 34 (2012); Trujillo v. Nw. Tr. Servs., Inc., 181 Wn. App. 484, 502, 326 P.3d 768 (2014), rev'd on other grounds, 183 Wn.2d at 820. The "holder" of the note is not necessarily the "owner," and ownership of a note is irrelevant to the power to enforce it. Brown, 184 Wn.2d at 524-25. A loan "servicer" is not necessarily the owner, but the servicer must be a holder of the note in order to enforce it. Brown, 184 Wn.2d at 523. "[A] party's undisputed declaration submitted under penalty of perjury that it is the holder of the note satisfies . . . [the deeds of trust act]'s proof of beneficiary provisions." Brown, 184 Wn.2d at 544. The holder of the note, which is the evidence of the debt, has the power to enforce the deed of trust because the deed of trust follows the note by operation of law. Bain, 175 Wn.2d at 104 (the deeds of trust act "contemplates that the security instrument will follow the note, not the other way around").

Here, the evidence shows that IndyMac initially possessed the original note. At some point prior to March 23, 2010, IndyMac transferred physical custody of the note to OneWest. The banks' counsel brought Hurney's original note to court for the summary judgment hearing to substantiate the banks' claim that OneWest had physical custody

of the note on behalf of HSBC.[5]  See Deutsche Bank Nat'l Trust Co. v. Slotke, 192 Wn. App. 166, 175, 367 P.3d 600 (2016) ("This record makes clear that the bank presented the original note for inspection by the court at the summary judgment hearing.  This was sufficient to prove the bank's status as holder of [the borrower's] delinquent note.").  Hurney fails to identify any specific evidence showing that either OneWest or HSBC misled him about the identity of the noteholder.  The 2010 Affidavit of Holder of Note establishes that on the date OneWest appointed RTS as the successor trustee on behalf of the beneficiary, HSBC, OneWest possessed the original note endorsed in blank.  The appointment of RTS as successor trustee was neither unfair nor deceptive.

Noteholders may have their interests represented by agents.  Bain, 175 Wn.2d at 106.  Hurney asserts no evidence shows OneWest was acting as HSBC's agent in 2010 when it signed the document to appoint the successor trustee.  Hurney points out the banks provided only a document showing that OneWest had limited power of attorney in 2011, after RTS was appointed.  Hurney argues Bavand v. OneWest Bank, FSB, 176 Wn. App. 475, 309 P.3d 636 (2013), is comparable.  We disagree.

In Bavand, OneWest executed an appointment of successor trustee when it was neither the named beneficiary under the deed of trust nor the holder of the promissory note.  Bavand, 176 Wn. App. at 487.  Because OneWest was not the holder of the borrower's note when it appointed the successor trustee, the trustee did not succeed to any of the original powers under the deed of trust and did not have power to conduct the foreclosure.  Bavand, 176 Wn. App. at 488.  Accordingly, we reversed dismissal under CR 12(b)(6).  Bavand, 176 Wn. App. at 511.

---

[5] Neither Hurney nor the court asked to inspect the note during the hearing.

In contrast to the position of OneWest in <u>Bavand</u>, here, OneWest had authority conferred by a power of attorney or agency relationship with HSBC and the power to enforce the deed of trust and initiate foreclosure by virtue of possession of the note. In addition to the 2011 document giving limited power of attorney to OneWest, the evidence in the record includes the declaration of a OneWest assistant vice president stating that in 2010, OneWest was the loan servicer and "attorney in fact for HSBC." The record also includes the declaration of an HSBC vice president stating that a similar power of attorney document covered the period before January 2011, but that a copy of the document could not be located. Nevertheless, the HSBC corporate officer ratified the 2010 appointment of RTS on its behalf.[6] In addition, the HSBC 2007 "Pooling and Servicing Agreement" authorizes loan servicers such as OneWest to conduct foreclosure. Hurney does not identify any evidence creating a genuine issue of fact as to OneWest's authority to sign the document appointing RTS as successor trustee.

Although Hurney suggests otherwise, MERS's assignment of its "beneficial interest" in the deed of trust is irrelevant to the authority of OneWest to commence foreclosure by appointing a successor trustee. In <u>Bain</u>, the Supreme Court recognized that MERS could not appoint a successor trustee because it never held the promissory note and was thus an "ineligible" beneficiary under the deeds of trust act. <u>Bain</u>, 175 Wn.2d at 110. This was so because MERS lacked any right to confer on a successor trustee. Here, MERS did not appoint a successor trustee or otherwise initiate foreclosure. Because OneWest possessed the note at the time of the foreclosure, the

---

[6] <u>See</u> <u>Riss v. Angel</u>, 131 Wn.2d 612, 636, 934 P.2d 669 (1997) (ratification of acts is given effect as if originally authorized).

lack of a valid assignment of interest by MERS does not preclude or affect OneWest's authority to enforce the deed of trust and to appoint a successor trustee on behalf of HSBC.

Hurney alleges the representation by MERS that it had a "beneficial interest" was deceptive. But MERS is not a party to this action. As noted, OneWest's possession of the note, not any purported assignment by MERS, gave OneWest the power to foreclose. In addition, Hurney fails to demonstrate any injury causally related to the purported assignment by MERS. See Bavand v. OneWest Bank, FSB, 196 Wn. App. 813, 842-43, 385 P.3d 233 (2016) (although MERS's assignment of interest was "presumptively deceptive," the deceptive characterization of its interest did not cause any injury where authority to enforce the note and deed of trust arose by operation of law due to the bank's noteholder status).

Hurney also points to a 2013 document entitled "Beneficiary Declaration Pursuant to Chapter 61.24 RCW (HB 2614) and Foreclosure Loss Mitigation Form" as unfair or deceptive. The document, submitted by the banks in support of the motion for summary judgment, designates HSBC as the beneficiary and OneWest as the loan servicer and confirms that the beneficiary or its agent contacted Hurney prior to mediation to discuss options to avoid foreclosure. Hurney asserts this document failed to comply with the requirements of the deeds of trust act proof of beneficiary provisions and should not have been relied on in the foreclosure mediation or the attempted foreclosures. But Hurney does not allege, much less establish, that they received this document during the foreclosure process or was somehow misled by it.

Hurney claims the document does not comply with RCW 61.24.030(7)(a) that requires before recording, transmitting, or serving a notice of trustee's sale, the trustee must have proof that the beneficiary is the owner of the note. But the foreclosure trustee RTS is not a party to this appeal. In any event, the document was created in 2013 and clearly not relied on by RTS in 2010.

Hurney also claims the Beneficiary Declaration Pursuant to Chapter 61.24 RCW (HB 2614) and Foreclosure Loss Mitigation Form does not satisfy RCW 61.24.163(5). RCW 61.24.163(5) lists documents that must be submitted to the mediator prior to mediation under the foreclosure mediation program, including a document to establish that the entity claiming to be the beneficiary is the owner of the note. RCW 61.24.163(5)(c). Hurney does not present any evidence that the mediator did not receive such a document or that the mediator relied upon inadequate information to determine that HSBC was the beneficiary of the note.

Hurney cites no authority to support the argument that OneWest lacked authority to participate in foreclosure mediation in 2013 when it was both the noteholder and had power of attorney to act on behalf of HSBC. The limited power of attorney document specifically empowered OneWest to "collect, negotiate or otherwise settle any deficiency claim."

Because Hurney did not present evidence that HSBC or OneWest engaged in an unfair or unlawful practice in the course of the attempted foreclosures, we affirm

summary judgment dismissal of the CPA claim and the lawsuit against HSBC and OneWest.

WE CONCUR: