IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| BRIAN J. WINTERS and REBECCA L. WINTERS, | ) ) ) | No. 79662-3-I |
| Respondents, | ) ) ) | DIVISION ONE |
| v. | ) ) | |
| QUALITY LOAN SERVICE CORPORATION OF WASHINGTON, INC., | ) ) ) ) | |
| Petitioner, | ) ) | PUBLISHED OPINION |
| WELLS FARGO BANK, NA as Trustee on behalf of the registered holders of Morgan Stanley ABS Capital I Inc. Trust 2007-HE4 Mortgage Pass-Through Certificates, Series 2007-HE4; SELECT PORTFOLIO SERVICING, INC.; and DOE DEFENDANTS 1-20, inclusive, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | FILED: December 30, 2019 |

SCHINDLER, J. — Only the actual holder of a promissory note that is secured by a deed of trust has the authority to replace the trustee named in the deed of trust and appoint a successor trustee to proceed with a nonjudicial foreclosure. However, in Bain v. Metropolitan Mortgage Group, Inc., 175 Wn.2d 83, 106, 285 P.3d 34 (2012), the Washington Supreme Court makes clear that "Washington law, and the deed of trust act itself, approves of the use of agents" to act on behalf of the holder to enforce the

promissory note or instrument evidencing the debt in a nonjudicial foreclosure proceeding. Brian and Rebecca Winters (collectively, Winters) defaulted on the promissory note secured by a deed of trust on their property. We granted discretionary review of denial of summary judgment dismissal of the Consumer Protection Act, chapter 19.86 RCW, claims against the successor trustee alleging the successor trustee did not have the authority under the deed of trust act (DTA), chapter 61.24 RCW, to foreclose on the property. The uncontroverted record establishes that the actual holder of the note, "Wells Fargo Bank, National Association, as Trustee, on behalf of the registered holders of Morgan Stanley ABS Capital I Inc., Trust 2007-HE4, Mortgage Pass-Through Certificates, Series 2007-HE4" (Wells Fargo N.A.), executed a limited power of attorney appointing Select Portfolio Servicing Inc. (SPS) as its attorney-in-fact with authority to execute documents in the nonjudicial foreclosure proceeding. As a prerequisite to initiating the nonjudicial foreclosure, SPS as the attorney-in-fact for Wells Fargo N.A. executed a declaration stating under penalty of perjury that Wells Fargo N.A. was the actual holder of the note and appointed Quality Loan Service Corporation of Washington (QLS) as the successor trustee. Because SPS had the authority to act as the authorized agent of Wells Fargo N.A. and the uncontroverted record establishes QLS complied with the statute that governs qualifications for a successor trustee, we reverse denial of summary judgment. We remand to dismiss the claims against QLS. On remand, the court shall also address the propriety of imposition of expenses under RCW 61.24.090(1)(b).

Promissory Note and Deed of Trust

In October 2006, Brian and Rebecca Winters (collectively, Winters) borrowed $114,400 from Decision One Mortgage Company LLC to purchase property located at

306 South 6th Street, Satsop, Washington. Winters executed an adjustable rate note on October 20, 2006. Winters promised to make monthly payments until November 1, 2036. The note was indorsed in blank. The note states, "I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.' " The note was secured by a recorded deed of trust on the property. The deed of trust identifies Winters as the borrower, Decision One as the lender, First American Title Insurance Company as "Trustee," and Mortgage Electronic Registration Systems Inc. (MERS) as the beneficiary and "nominee for Lender and Lender's successors and assigns."

Decision One sold the note to a securitized trust, "Wells Fargo Bank, National Association, as Trustee, on behalf of the registered holders of Morgan Stanley ABS Capital I Inc., Trust 2007-HE4, Mortgage Pass-Through Certificates, Series 2007-HE4" (Wells Fargo N.A.). Select Portfolio Servicing Inc. (SPS) acted as the mortgage servicer on the note. Winters stopped making payments on January 1, 2012.

Limited Power of Attorney

On August 31, 2012, Wells Fargo N.A. Vice President Barry Silvermetz executed a notarized "Limited Power of Attorney." Wells Fargo N.A. appointed SPS "as its true and lawful attorney-in-fact, acting by and through its authorized officers, with full authority and power to execute and deliver on behalf of" Wells Fargo N.A.:

> (ii) [A]ll documents and instruments necessary to conduct any (a) foreclosure, or (b) the taking of any deed in lieu of foreclosure, or (c) any judicial or non-judicial foreclosure or termination, cancellation, or rescission of any such foreclosure, or (d) any similar procedure (collectively, as applicable, a "Foreclosure");
> . . . ;
> (iv) instruments appointing one or more substitute trustees or special purpose entities ("SPEs") to act in place of the corresponding entity named in any deed of trust;

(v) affidavits of debt, notice of default, declaration of default, notices of foreclosure, and all such contracts, agreements, deeds, and instruments as are appropriate to (a) maintain any real property acquired through Foreclosure, or (b) effect any sale, transfer, or disposition of real property acquired through Foreclosure;

(vi) all documents and instruments necessary to effect any assignment of mortgage or assignment of deed of trust; and

(vii) all other comparable instruments.[1]

SPS recorded the Limited Power of Attorney on October 8, 2012.

Appointment of Successor Trustee

On December 5, 2013, SPS as the attorney-in-fact for Wells Fargo N.A. executed a notarized "Appointment of Successor Trustee." SPS appointed Quality Loan Service Corporation of Washington (QLS) as the successor to the trustee named in the October 20, 2006 deed of trust that secured the Winters' note. The Appointment of Successor Trustee states, in pertinent part:

> [W]hereas, Wells Fargo Bank, National Association, as Trustee, in trust for the registered holders of Morgan Stanley ABS Capital I Trust 2007-HE4, Mortgage Pass-Through Certificates, Series 2007- HE4 is the present Beneficiary under said Deed of Trust, and desires to appoint and hereby does appoint QUALITY LOAN SERVICE CORPORATION OF WASHINGTON as the new Trustee in place and stead of the present Trustee thereunder.
>
> . . . .
>
> NOW THEREFORE, the undersigned, Wells Fargo Bank, National Association, as Trustee, in trust for the registered holders of Morgan Stanley ABS Capital I Trust 2007-HE4, Mortgage Pass-Through Certificates, Series 2007- HE4, hereby substitutes QUALITY LOAN SERVICE CORPORATION OF WASHINGTON as Trustee under said Deed of Trust.

The Appointment of Successor Trustee was recorded on December 17, 2013.

---

[1] Emphasis added.

Beneficiary Declaration

As a prerequisite to issuing a notice of trustee's sale, the trustee must have proof under penalty of perjury that the beneficiary is the actual holder of the note. RCW 61.24.030(7)(a). On November 25, 2013, SPS as the attorney-in-fact for Wells Fargo N.A. executed a declaration under penalty of perjury stating that Wells Fargo N.A. is the beneficiary and actual holder of the Winters' note. The "Declaration of Ownership" states:

> Re:  Loan Number . . . ; BRIAN WINTERS
>
> Under penalty of perjury, the undersigned hereby represents and declares as follows:
>
> I am employed as Document Control Officer for Select Portfolio Servicing, Inc. I am duly authorized to make this declaration on behalf of:
>
> 1) Wells Fargo Bank, National Association, as Trustee, on behalf of the registered holders of Morgan Stanley ABS Capital I Trust 2007-HE4, Mortgage Pass-Through Certificates, Series 2007-HE4
>
> Hereby known as beneficiary.
>
> 2) Wells Fargo Bank, National Association, as Trustee, on behalf of the registered holders of Morgan Stanley ABS Capital I Trust 2007-HE4, Mortgage Pass-Through Certificates, Series 2007-HE4
>
> is the actual holder of the Promissory Note evidencing the above-referenced loan.
>
> 3) The Note has not been assigned or transferred to any other person or entity.
>
> 4) Beneficiary understands that the trustee foreclosing the deed of trust securing the above-referenced loan will rely upon this Declaration before issuing the notice of trustee's sale.

<u>Notice of Default</u>

In March 2014, Winters filed for chapter 7 bankruptcy. Winters was discharged from bankruptcy in August 2014.

On August 4, 2014, QLS sent Winters a "Notice of Default." The Notice of Default was signed by QLS assistant secretary Gladys Limon. The Notice of Default states Wells Fargo N.A. is the "current owner of the Note secured by the Deed of Trust." The attached "Foreclosure Loss Mitigation" form is executed by SPS "as authorized agent of Beneficiary." The Foreclosure Loss Mitigation form states that the "authorized agent for the beneficiary hereby represents and declares under the penalty of perjury" that the "beneficiary's authorized agent has contacted the borrower under, and has complied with; RCW 61.24.031 and the borrower did not request a meeting."

Winters did not cure the default.

<u>Notice of Trustee's Sale</u>

On September 5, 2014, QLS issued a "Notice of Trustee's Sale" of the property for January 9, 2015. The Notice of Trustee's Sale was signed by QLS assistant secretary Maria Montana. On April 9, 2015, QLS issued a "Notice of Discontinuance of Trustee's Sale."

On August 27, 2015, QLS issued a second "Notice of Trustee's Sale" of the property for January 8, 2016. The Notice of Trustee's Sale is signed by QLS assistant secretary Lauren Esquivel and was recorded in Grays Harbor County.

Winters did not cure the default before the trustee's sale on January 8. QLS sold the property to Wells Fargo N.A. as the highest bidder. On January 20, 2016, QLS assistant secretary Janice Stavee recorded the "Trustee's Deed upon Sale" issued to

Wells Fargo N.A.

> The GRANTOR, QUALITY LOAN SERVICE CORPORATION OF
> WASHINGTON, as current Trustee, (whereas so designated in the Deed
> of Trust hereunder more particularly described or as duly appointed
> Successor Trustee) under that Deed of Trust in consideration of the
> premises and payment recited below, hereby grants and conveys, without
> representation or warranty, expressed or implied, all right title and interest
> to Wells Fargo Bank, National Association.

Lawsuit

In September 2016, Winters filed a lawsuit against Wells Fargo N.A., SPS, and QLS alleging violation of the Consumer Protection Act (CPA), chapter 19.86 RCW, based on the failure to comply with the requirements of the deed of trust act (DTA), chapter 61.24 RCW. Winters alleged SPS was not "lawfully authorized" to appoint QLS as the successor trustee to initiate the nonjudicial foreclosure under the DTA "because it was neither the note holder nor the loan owner." Winters alleged Wells Fargo N.A. was liable for the actions of SPS and QLS "since they were apparently acting as its 'agent.' " Winters alleged QLS violated the CPA by "initiating and completing a nonjudicial foreclosure when it did not have the legal authority to do so." Winters also alleged QLS "did not have the legal authority to act as a foreclosing trustee under Washington law because it did not have an officer that resides in the State of Washington."

QLS Motion for Summary Judgment Dismissal

QLS filed a motion for summary judgment dismissal of the claims. QLS asserted the nonjudicial foreclosure complied with the requirements of the DTA. QLS argued the undisputed evidence established Wells Fargo N.A. was the beneficiary and holder of the Winters' note and as a matter of law, Wells Fargo N.A. had the authority to authorize SPS to act on its behalf to execute documents in the nonjudicial foreclosure proceeding, including the appointment of QLS as the successor trustee and the Declaration of

Ownership. QLS asserted it met the statutory qualifications to act as the successor trustee.

QLS Vice President Sierra Herbert-West submitted a declaration in support of the summary judgment motion. Herbert-West attached to her declaration "true and accurate" copies of the Winters' note and the deed of trust "contained within [QLS]'s file," the Limited Power of Attorney, the assignment of deed of trust, the Declaration of Ownership, the Appointment of Successor Trustee, the Notices of Trustee's Sale, and the Trustee's Deed upon Sale. Herbert-West states:

> In my capacity as a Trustee Sales Officer and corporate Vice President, I have custody and control of the files and records of the non-judicial foreclosure sales performed by [QLS]. These records are made in the ordinary course of business by people who have a business duty to make such records, and/or are received by [QLS] in the ordinary course of its business, which includes acting as a trustee in non-judicial foreclosures. [QLS]'s records are made at or near the time of the occurrence of the event or events that they record.

Herbert-West also attached the QLS bylaws and the QLS "Action of Directors" designating assistant secretaries as QLS corporate officers with the authority to act on behalf of QLS. Herbert-West states that throughout the foreclosure proceedings, QLS "had at least one corporate officer who was a state resident":

> When the Notice of Default was issued in August of 2014, [QLS] had at least three resident officers — (1) the President, Philip Martin, (2) a Vice President, Robert McDonald, and (3) myself. Mr. McDonald and I have continued to be resident officers through present day. The Winters never raised any issues with [QLS] about the beneficiary's compliance with the pre-foreclosure contact requirements.
> . . . Attached hereto . . . is a true and correct copy of the first Notice of Sale issued by [QLS]. In September of 2014 when the first Notice of Sale was issued, and continuing to present day, [QLS] has had a physical office in Seattle. The Seattle office has at all times had telephone service and at least one employee. As of the date of this declaration, there are approximately seventeen employees working in the Seattle office.

8

In opposition, Winters argued that as a matter of law, SPS did not have the authority to appoint QLS as the foreclosing trustee. Winters asserted the DTA allows only a "beneficiary," not an agent, to replace the trustee named in the deed of trust. Winters also argued QLS was not authorized to act as the successor trustee because no officer of QLS was a resident of Washington when SPS appointed QLS as the successor trustee. The only evidence Winters submitted in opposition to summary judgment was a copy of the findings of fact and conclusions of law a court entered in another case, Hooker v. Bank of America, N.A., King County Superior Court No. 14-2-11009-0 SEA.

In Hooker, the court found that QLS did not present any evidence that an assistant secretary was authorized to act as a corporate officer in 2013 and 2014:

> 18.     During 2013 and into 2014, no corporate officer of [QLS] resided in the State of Washington. Sierra Herbert-West had the title of an "assistant secretary" in [QLS]'s Washington office. Ms. Herbert-West was not a corporate officer of [QLS].
> 19.     In 2013, [QLS] reported to the Washington Secretary of State that Ms. Herbert-West was an "assistant secretary" with an address in Washington state.
> 20.     [QLS] presented no evidence that, during any time relevant to this case, its corporate bylaws authorized its board of directors to appoint any person to serve as an "assistant secretary" of the corporation.

The court in Hooker concluded QLS "violated RCW 61.24.010(1)(a)" because QLS "was not legally qualified under Washington law to act as the successor trustee of the Plaintiff's Deed of Trust."

The court in Hooker also found there was no evidence of "a power of attorney or any other documentation" that supported QLS' "contention that Wells Fargo had the authority to act as 'attorney in fact' or otherwise as an agent for Bank of America with

respect to a nonjudicial deed-of-trust foreclosure of the Plaintiff's deed of trust." The

findings state:

> 12.     No power of attorney was introduced into evidence at trial to support [QLS]'s contention that Wells Fargo had the authority to act as "attorney in fact" or otherwise as an agent for Bank of America with respect to a nonjudicial deed-of-trust foreclosure of the Plaintiff's deed of trust.
> 13.     Bank of America did not execute a power of attorney appointing Wells Fargo to act as its attorney in fact to initiate and carry out a nonjudicial deed-of-trust foreclosure proceeding against the Plaintiff's residence.
> 14.     Bank of America lacked the control over Wells Fargo that is necessary in order to establish a principal-agent relationship.
> 15.     Wells Fargo did not act as Bank of America's attorney in fact or otherwise as Bank of America's agent when Wells Fargo executed the Appointment of Successor Trustee purporting to appoint [QLS] to serve as successor trustee of the Plaintiff's deed of trust.
> 16.     [QLS] did not reasonably rely on the Beneficiary Declaration that Wells Fargo signed as proof that Wells Fargo was acting as Bank of America's attorney in fact or otherwise as Bank of America's agent with respect to the nonjudicial foreclosure of the Plaintiff's Deed of Trust.

The conclusions of law in Hooker state, in pertinent part:

> 8.     The relationship between Wells Fargo and Bank of America was an independent-contractor relationship, not a principal-agent relationship.
> 9.     Wells Fargo was not the holder of the Note when it initiated the nonjudicial foreclosure proceeding with respect to the Plaintiff's Deed of Trust.
> 10.     Wells Fargo did not act as Bank of America's attorney in fact or otherwise as Bank of America's agent when Wells Fargo executed the Appointment of Successor Trustee with respect to the nonjudicial foreclosure of the Plaintiff's deed of trust.
>     . . . .
> 12.     [QLS] violated RCW 61.24.010(2) because it was not a duly appointed Successor Trustee when it commenced the foreclosure sale of the Plaintiff's Deed of Trust.

In reply, QLS asserted that as a matter of law, the beneficiary and holder of the

promissory note has the power to act through an agent. QLS argued the superior court

findings of fact and conclusions of law in Hooker were not binding. QLS also pointed

out that unlike in Hooker, the unrebutted evidence established that Wells Fargo N.A., as the beneficiary and actual holder of the Winters' note, executed a Limited Power of Attorney authorizing SPS to execute documents on its behalf in the nonjudicial foreclosure proceeding and appoint QLS as the successor trustee. QLS noted that unlike in Hooker, it submitted the QLS bylaws and corporate documents that established assistant secretaries are corporate officers and presented unrebutted testimony that QLS had at least one resident corporate officer in the state of Washington throughout the nonjudicial foreclosure on the Winters' property.

The trial court denied summary judgment dismissal of the claims against QLS. QLS filed a motion for discretionary review. The commissioner granted discretionary review under RAP 2.3(b)(1) (obvious error which would render further proceedings useless).

Use of an Agent under the DTA

QLS contends the court erred in denying the motion for summary judgment dismissal of the claims against it. QLS asserts the uncontroverted record established the nonjudicial foreclosure of the Winters' property complied with the requirements of the DTA.

We review summary judgment de novo. Citizens All. for Prop. Rigths Legal Fund v. San Juan County, 184 Wn.2d 428, 435, 359 P.3d 753 (2015). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). The moving party bears the initial burden to submit evidence and establish entitlement to judgment as a matter of law. Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). The nonmoving party must then present " 'specific facts which sufficiently rebut the moving

11

party's contentions' " and create a genuine issue of material fact. Ranger, 164 Wn.2d at 552 (quoting Meyer v. Univ. of Wash., 105 Wn.2d 847, 852, 719 P.2d 98 (1986)).

The nonmoving party cannot rely either on argumentative assertions that unresolved factual issues remain or on speculation. Ranger, 164 Wn.2d at 552. Mere allegations, denials, opinions, "or conclusory statements of facts unsupported by evidence are not sufficient to establish a genuine issue" of material fact. Rucker v. NovaStar Mortg., Inc., 177 Wn. App. 1, 6, 311 P.3d 31 (2013).

If the borrower defaults on an underlying obligation secured by a deed of trust that grants the trustee the power of sale, the trustee may foreclose on "the deed of trust and sell the property without judicial supervision." Bain v. Metro. Mortg. Grp., Inc., 175 Wn.2d 83, 93, 285 P.3d 34 (2012) (citing RCW 61.24.020; RCW 61.12.090; RCW 7.28.230(1)). Accordingly, the DTA provisions must be strictly complied with and " 'construed in favor of borrowers.' " Bain, 175 Wn.2d at 93 (quoting Udall v. T.D. Escrow Servs., Inc., 159 Wn.2d 903, 915-16, 154 P.3d 882 (2007)). Violation of the requirements of the DTA constitutes an actionable claim for damages under the CPA. Lyons v. U.S. Bank Nat'l Ass'n, as Tr. for Stanwich Mortg. Loan Tr. Series 2012-3, by Carrington Mortg. Servs., LLC, 181 Wn.2d 775, 789, 336 P.3d 1142 (2014).

QLS contends Washington law allows the beneficiary and holder of the note to use an authorized agent to execute documents in a nonjudicial foreclosure proceeding, including the appointment of a successor trustee and the beneficiary declaration. Winters argues the court did not err in denying summary judgment dismissal of the CPA claims because SPS did not have the authority to appoint QLS as the successor trustee or execute the beneficiary declaration. Winters claims only the beneficiary of the promissory note has the authority to appoint a successor trustee and execute a

beneficiary declaration. If a beneficiary does not have the authority to appoint a successor trustee, " 'the putative trustee lacks the legal authority to record and serve a notice of trustee's sale.' " Rucker, 177 Wn. App. at 14 (quoting Walker v. Quality Loan Serv. Corp., 176 Wn. App. 294, 306, 308 P.3d 716 (2013)).

"Traditionally, the 'beneficiary' of a deed of trust is the lender who has loaned money to the homeowner." Bain, 175 Wn.2d at 88. The DTA "gives subsequent holders of the debt the benefit of the act by defining 'beneficiary' broadly as 'the holder of the instrument or document evidencing the obligations secured by the deed of trust.' " Bain, 175 Wn.2d at 88 (quoting RCW 61.24.005(2)). The deed of trust that secures the promissory note protects the lender by giving the lender the power to nominate a trustee to sell the home if the debt is not paid. Bain, 175 Wn.2d at 88. The court in Bain explains:

> Lenders, of course, have long been free to sell that secured debt, typically by selling the promissory note signed by the homeowner. Our deed of trust act, chapter 61.24 RCW, recognizes that the beneficiary of a deed of trust at any one time might not be the original lender.

Bain, 175 Wn.2d at 88.

The note in this case is a negotiable instrument governed by the Uniform Commercial Code (UCC), Title 62A RCW. Brown v. Dep't of Commerce, 184 Wn.2d 509, 524, 359 P.3d 771 (2015). The UCC defines a "negotiable instrument" as "an unconditional promise or order to pay a fixed amount of money" if three requirements are met. RCW 62A.3-104(a). The instrument must (1) be "payable to bearer or to order at the time it is issued or first comes into possession of a holder," (2) be "payable on demand or at a definite time," and (3) concern only a promise to pay money rather than "any other" performance (except for certain limited exceptions that allow nonmonetary

13

performance, including that the instrument may include "an undertaking or power to give, maintain, or protect collateral to secure payment"). RCW 62A.3-104(a). Here, the note is indorsed in blank and is therefore payable to the bearer. See RCW 62A.3-205(b). The note is payable at a definite time every month until November 1, 2036 and concerns only Winters' obligation to pay. See RCW 62A.3-108(b).

The UCC recognizes that "a holder of a note is entitled to enforce the note." Brown, 184 Wn.2d at 540. RCW 62A.3-301 provides:

> "Person entitled to enforce" an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to RCW 62A.3-309 or 62A.3-418(d). A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

The holder of the promissory note has the authority to enforce the deed of trust because the deed of trust follows the note by operation of law. Bain, 175 Wn.2d at 104 (The DTA "contemplates that the security instrument will follow the note, not the other way around."). In Brown, the court held the beneficiary must be the holder but not the "owner" of the note. Brown, 184 Wn.2d at 540.

The DTA states the beneficiary "shall appoint a trustee or a successor trustee" to replace the trustee named in the deed of trust. RCW 61.24.010(2). In Bain, the court held that "only the actual holder of the promissory note or other instrument evidencing the obligation may be a beneficiary with the power to appoint a trustee to proceed with a nonjudicial foreclosure on real property." Bain, 175 Wn.2d at 89; see RCW 61.24.010(2). However, the court expressly states, "[N]othing in this opinion should be construed to suggest an agent cannot represent the holder of a note. Washington law,

14

and the deed of trust act itself, approves of the use of agents." Bain, 175 Wn.2d at 106[2] (citing RCW 61.24.031(1)(a) ("A trustee, beneficiary, or authorized agent may not issue a notice of default . . . until . . . .")[3]); see also RCW 61.24.040(8)[4] (a nonjudicial foreclosure sale of property shall be conducted by "the trustee or its authorized agent").[5] The court states that " 'an agency relationship results from the manifestation of consent by one person that another shall act on his behalf and subject to his control, with a correlative manifestation of consent by the other party to act on his behalf and subject to his control.' " Bain, 175 Wn.2d at 106 (quoting Moss v. Vadman, 77 Wn.2d 396, 402-03, 463 P.2d 159 (1969)). "[A]gency requires a specific principal that is accountable for the acts of its agent." Bain, 175 Wn.2d at 107.

Here, the undisputed record shows SPS had the authority to act as an agent on behalf of Wells Fargo N.A. in the nonjudicial foreclosure. On August 31, 2012, Wells Fargo N.A. as the actual holder of the Winters' note executed a Limited Power of Attorney appointing SPS "as its true and lawful attorney-in-fact" with the "full authority and power" to execute "all documents and instruments necessary" to conduct a nonjudicial foreclosure and to appoint "one or more substitute trustees" to replace the trustee named in the deed of trust. On November 25, 2013, SPS as the attorney-in-fact for Wells Fargo N.A. executed a Declaration of Ownership on behalf of Wells Fargo N.A. verifying under penalty of perjury that Wells Fargo N.A. "is the actual holder of the Promissory Note" for the Winters' loan and that the "Beneficiary understands that the

---

[2] Emphasis added.

[3] Emphasis added.

[4] We note the legislature amended RCW 61.24.040 in 2012 and renumbered the subsections. LAWS OF 2012, ch. 185, § 10. Because the language of RCW 61.24.040(8) did not change, we cite the current statute.

[5] Emphasis added.

trustee foreclosing the deed of trust securing the [Winters'] loan will rely upon this Declaration before issuing the notice of trustee's sale." On December 5, 2013, SPS executed the Appointment of Successor Trustee as the authorized attorney-in-fact for Wells Fargo N.A. The unambiguous Appointment of Successor Trustee states that Wells Fargo N.A. is the "present Beneficiary" under the deed of trust and that Wells Fargo N.A. "hereby does appoint QUALITY LOAN SERVICE CORPORATION OF WASHINGTON as the new Trustee."

The DTA expressly allowed QLS as the successor trustee to rely on the Declaration of Ownership executed by SPS on behalf of Wells Fargo N.A. RCW 61.24.030(7)(b) states the trustee "is entitled to rely on the beneficiary's declaration as evidence of proof required under this subsection" that the beneficiary is the actual holder of the note. Former RCW 61.24.030(7)(a) (2012)[6] provides:

> That, for residential real property, before the notice of trustee's sale is recorded, transmitted, or served, the trustee shall have proof that the beneficiary is the owner of any promissory note or other obligation secured by the deed of trust. A declaration by the beneficiary made under the penalty of perjury stating that the beneficiary is the actual holder of the promissory note or other obligation secured by the deed of trust shall be sufficient proof as required under this subsection.

Because SPS had the authority to execute the beneficiary declaration under penalty of perjury attesting that Wells Fargo N.A. is the holder of the note, QLS could rely on that declaration. An unrebutted declaration satisfies the requirement under RCW 61.24.030(7) to provide proof of a beneficiary. Brown, 184 Wn.2d at 544; Bain, 175 Wn.2d at 88.

---

[6] We note the legislature amended RCW 61.24.030(7)(a) in 2018 to replace the word "owner" with "holder" and delete the word "actual." LAWS OF 2018, ch. 306, § 1.

For the first time on appeal, Winters claims the beneficiary declaration is invalid because there is no evidence that the SPS employee had personal knowledge about the location of the note. Winters also claims there is no evidence about when QLS received the Limited Power of Attorney. We only consider evidence and issues called to the attention of the trial court on summary judgment. RAP 9.12; Kofmehl v. Baseline Lake, LLC, 177 Wn.2d 584, 594, 305 P.3d 230 (2013). Nonetheless, we note RCW 61.24.030(7) does not require proof of the location of the note and QLS presented unrebutted evidence that it had the Limited Power of Attorney before initiating the nonjudicial foreclosure.

In the alternative, Winters argues that even if Wells Fargo N.A. had the authority to use an agent, there is an issue of material fact as to whether a principal-agent relationship existed between Wells Fargo N.A. and SPS. We disagree.

A power of attorney is a written instrument by which one person as principal appoints another as agent and confers on the agent's authority to act in the place and stead of the principal for the purposes set forth in the instrument. Bryant v. Bryant, 125 Wn.2d 113, 118, 882 P.2d 169 (1994). The Uniform Power of Attorney Act, chapter 11.125 RCW, defines an "agent" as follows:

> [A] person granted authority to act for a principal under a power of attorney, whether denominated an agent, attorney-in-fact, or otherwise. The term includes an original agent, coagent, successor agent, and a person to which an agent's authority is delegated.

RCW 11.125.020(1).

The Limited Power of Attorney is a clear and unambiguous manifestation of Wells Fargo N.A.'s consent and authorization for SPS to act on its behalf in executing all required documentation to complete a nonjudicial foreclosure sale. The Limited

17

Power of Attorney authorizes SPS to act on behalf of Wells Fargo N.A. to execute documentation for a nonjudicial foreclosure on property, including the power to appoint a successor trustee and execute a beneficiary declaration.

Winters cites Rucker to argue there is an issue of material fact as to whether a principal-agent relationship existed between Wells Fargo N.A. and SPS. Rucker does not support their argument. In Rucker, the court held that "where an entity fails to identify a lawful principal who controls its actions, it has not established that it is an agent for purposes of the DTA." Rucker, 177 Wn. App. at 15. In Rucker, the agreement explicitly stated that the relationship of the alleged agent NovaStar Mortgage Inc. to the beneficiary of the deed of trust JPMorgan Chase Bank and J.P. Morgan Trust Company was intended " 'to be that of an independent contractor and not that of a joint venture, partner or agent.' " Rucker, 177 Wn. App. at 15-16.[7] Here, unlike In Rucker, the unrebutted record shows Wells Fargo N.A. was the principal who expressly delegated authority to SPS to act as its attorney-in-fact and authorized agent.

### RCW 61.24.010

QLS also contends the unrebutted record shows that assistant secretaries are corporate officers and that it met the qualifications for a successor trustee. RCW 61.24.010(1)(a) states that the trustee shall be "[a]ny domestic corporation or domestic limited liability corporation incorporated under Title 23B, 25, *30, 31, 32, or 33 RCW of which at least one officer is a Washington resident."[8]

---

[7] Some emphasis in original.

[8] "*Reviser's note: (1) Title 30 RCW was recodified and/or repealed pursuant to" LAWS OF 2014, ch. 37.

18

The undisputed record establishes QLS had at least one resident corporate officer in the state of Washington throughout the nonjudicial foreclosure. Herbert-West stated in her declaration in support of the motion for summary judgment dismissal that she has "been a resident of Washington since 1989" and that she and QLS Vice President Robert McDonald "have continued to be resident officers through present day."

The undisputed record establishes that the "Bylaws of Quality Loan Service Corporation of Washington" designate assistant secretaries as corporate officers with the authority to execute documents in a nonjudicial foreclosure for QLS. Article IX, section 1 states, in pertinent part:

OFFICERS

. . . The officers of the corporation shall be chosen by the board of directors and shall be a president, a vice-president, a secretary and a treasurer. The board of directors may also choose additional vice-presidents, and one or more assistant secretaries and assistant treasurers.

The unrebutted corporate records show QLS elected assistant secretaries as corporate officers. The bylaws also state an assistant secretary "shall have authority to affix" the seal of the corporation "to any instrument requiring it" and the corporate seal "may be attested by [the secretary's] signature or by the signature of such assistant secretary."

Because the uncontroverted record establishes that SPS had the authority to act as the authorized agent for the actual holder of the note in the nonjudicial foreclosure, to appoint QLS as the successor trustee, and to execute the beneficiary declaration, we reverse denial of the motion for summary judgment and remand to dismiss the claims against QLS. On remand, the court shall also address the propriety of imposition of

19

expenses incurred by QLS as the successor trustee in the nonjudicial foreclosure under RCW 61.24.090(1)(b).

Schindler, J.

WE CONCUR:

Andrus, J.

Dwyer, J.